VASS v. BD. OF TRUSTEES OF STATE EMPLOYEES' MEDICAL PLAN

[108 N.C. App. 251 (1992)]

THOMAS E. VASS v. BOARD OF TRUSTEES OF THE TEACHERS' AND
STATE EMPLOYEES' COMPREHENSIVE MAJOR MEDICAL PLAN

No. 9110SC895

(Filed 15 December 1992)

1. **Administrative Law and Procedure § 56 (NCI4th)— commencement of contested case—applicability of former APA**

A contested case commenced when plaintiff State employee, on 14 November 1984, appealed to the Board of Trustees of the State Employees' Medical Plan from the claim processor's decision to deny coverage for a radial keratotomy procedure, and the dispute was governed by the former APA, N.C.G.S. Ch. 150A, because the contested case was commenced before 1 January 1986. However, the Board was not prejudiced by the trial court's consideration of the case under N.C.G.S. Ch. 150B where the Board never entered a final decision denying plaintiff's claim and he was thus not time-barred from seeking judicial review under Ch. 150A; and although Ch. 150B provides that the case shall be heard before an ALJ and Ch. 150A provides that the hearing shall be before the Board, the Board is required in both instances to make the final decision and did so in this case.

**Am Jur 2d, Administrative Law § 354.**

2. **Insurance § 338 (NCI4th)— State Employees' Medical Plan— coverage of radial keratotomy**

Substantial evidence did not exist in the record to support a conclusion by defendant Board of Trustees that plaintiff's radial keratotomy was not a covered procedure under the State Employees' Medical Plan where the evidence showed that the radial keratotomy was not performed for cosmetic reasons or as a substitute for eyeglasses but was recommended by plaintiff's ophthalmologist as medically necessary to stop the worsening of the myopic condition in plaintiff's right eye; the procedure requires incisions or cuts to the patient's cornea and constitutes surgery; neither the American Medical Association nor the N.C. Medical Association has characterized the procedure as having no medical value; and the Board did not

VASS v. BD. OF TRUSTEES OF STATE EMPLOYEES' MEDICAL PLAN

[108 N.C. App. 251 (1992)]

deny plaintiff's claim as part of an overall program of cost containment. N.C.G.S. §§ 135-40.6, 135-40.7.

**Am Jur 2d, Insurance § 547.**

Appeal by respondent from judgment entered 25 March 1991 in Wake County Superior Court by Judge Henry V. Barnette, Jr. Heard in the Court of Appeals 22 September 1992.

*Thomas L. Fowler, and Bowden & Rabil, P.A., by S. Mark Rabil, for petitioner-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Grayson G. Kelley, for respondent-appellant.*

GREENE, Judge.

Plaintiff Thomas E. Vass (Vass) filed a petition for judicial review of the decision of the defendant Board of Trustees of the Teachers' and State Employees' Comprehensive Major Medical Plan (the Board), which denied Vass coverage for a medical claim. The trial court reversed the Board and the Board appeals.

Vass was an employee of the North Carolina Department of Labor in 1984, and as a part of his contract of employment was covered by the Teachers' and State Employees' Comprehensive Major Medical Plan (the Medical Plan). The Medical Plan is administered by the Board. Benefits under the Medical Plan are paid pursuant to N.C.G.S. §§ 135-40 to -40.7 (Supp. 1983). At the time this dispute arose, the Board had contracted with EDS Federal Corporation (EDS Federal), pursuant to N.C.G.S. § 135-40(b), to process claims and administer benefits under the Medical Plan. On 21 March 1984, in response to an inquiry from Vass, EDS Federal advised Vass that radial keratotomy, a surgical procedure in which laser incisions are made in the front surface of the patient's cornea, was not a covered procedure under the Medical Plan, and that no reimbursement would be made for the procedure. Vass and his ophthalmologist felt he needed radial keratotomy to stop the steady deterioration of vision in his right eye due to myopia (near-sightedness). On 19 June 1984, Vass underwent the radial keratotomy procedure, which was successful in stopping the deterioration, and incurred expenses of $1,725.00. On 21 June 1984, Vass filed a claim with EDS Federal for payment of these expenses. The claim was denied by EDS Federal on 28 August 1984. Vass appealed the

VASS v. BD. OF TRUSTEES OF STATE EMPLOYEES' MEDICAL PLAN

[108 N.C. App. 251 (1992)]

denial through EDS Federal and reimbursement was again denied. Vass then appealed directly to the Board. The Board decided, without granting Vass a hearing, that the claim would not be paid. The Board gave as its reasons that radial keratotomy was a substitute for eyeglasses and had no medical value. After being informed of the Board's decision, Vass contacted the Medical Director of EDS Federal and sought to have the Board's decision reconsidered. On 22 March 1985, Vass was informed by EDS Federal's Medical Director that he had exhausted all of his appeals and "[t]here is no further appeal other than through litigation."

Having been told that his only available relief was through litigation, Vass filed a complaint in Wake County District Court against the Board on 10 July 1985, alleging that the Board was breaching its employment contract with Vass by refusing to reimburse his legitimate medical expenses under the Medical Plan. The trial court granted the Board's motion for summary judgment, and Vass appealed to this Court. In an opinion dated 15 March 1988, this Court held that the trial court lacked subject matter jurisdiction over the case because the Board was an administrative agency. Therefore, contrary to the Medical Director's representation to Vass that he had exhausted his administrative remedies, any dispute with the Board must be brought under the Administrative Procedure Act (the APA). *Vass v. Board of Trustees of the Teachers' and State Employees' Comprehensive Major Medical Plan*, 89 N.C. App. 333, 335, 366 S.E.2d 1, 2 (1988), *modified and aff'd*, 324 N.C. 402, 379 S.E.2d 26 (1989). The North Carolina Supreme Court modified and affirmed this ruling, stating that the Board's decision to deny Vass coverage for radial keratotomy surgery was subject to judicial review only under the terms of the APA, and that Vass must therefore exhaust all administrative remedies available to him under the APA prior to seeking judicial review. Because Vass had not exhausted his administrative remedies prior to seeking judicial review, summary judgment for the Board was vacated and the case dismissed. *Vass v. Board of Trustees of the Teachers' and State Employees' Comprehensive Major Medical Plan*, 324 N.C. 402, 379 S.E.2d 26 (1989). In so ruling, the Court specifically declined to consider whether the former version of the APA, N.C.G.S. § 150A, or the current version of the APA, N.C.G.S. § 150B, would apply to this dispute. The Court also declined to decide whether Vass is now time-barred from commencing an administrative proceeding under the controlling version of the APA. *Id.*

On 13 April 1988, Vass filed a petition for a contested case hearing in the Office of Administrative Hearings (the OAH) pursuant to N.C.G.S. § 150B. The OAH referred the case to an Administrative Law Judge (ALJ). The ALJ ruled that N.C.G.S. § 150B controlled the case, and recommended on 18 August 1989 that payment be made for the radial keratotomy procedure. The Board rejected the ALJ's recommendation on 15 November 1989 and affirmed its original decision that the procedure was not eligible for reimbursement. Vass was served with the decision on 17 January 1990. On 26 February 1990, Vass filed a petition for judicial review in superior court. The trial court found that Vass had properly filed this action under N.C.G.S. § 150B, that the action was not time-barred, and reversed the final agency decision that radial keratotomy was not a covered procedure under the Medical Plan.

The Board contends that Vass' dispute became a contested case when appealed from EDS Federal to the Board on 14 November 1984, and the former version of the APA, N.C.G.S. § 150A, applies. The Board further contends that Vass' action seeking judicial review is time-barred because he did not file a petition for judicial review within thirty days of the Board's final decision as required by N.C.G.S. § 150A. In the alternative, the Board contends that the trial court failed to follow the standard of review set forth in N.C.G.S. § 150B-51 for reviewing the Board's final decision.

Vass contends that the current version of the APA, Chapter 150B, controls because he was given no opportunity for a hearing prior to his filing of a petition for a contested case hearing with the OAH on 26 April 1988. He further contends that his petition for judicial review was timely filed within thirty days of the Board's final decision and the trial court acted properly in reviewing the final decision of the Board.

---

The issues presented are whether (I) the trial court committed harmful error in applying N.C.G.S. § 150B to this case; and (II) substantial evidence exists in the record to support the final decision of the Board.

I

Administrative remedies designed to settle disputes between state agencies and those affected by agency action are set forth

in the APA. The original APA, codified as N.C.G.S. § 150A, was effective until 31 December 1985. The APA was rewritten in 1985 and recodified as N.C.G.S. § 150B, with the new version becoming effective 1 January 1986. 1985 N.C. Sess. Laws ch. 746, § 1. The provisions of N.C.G.S. § 150B "shall not affect contested cases commenced before January 1, 1986." 1985 N.C. Sess. Laws ch. 746, § 19. Therefore, if a contested case commenced between Vass and the Board prior to 1 January 1986, it was error to apply N.C.G.S. § 150B to this case.

N.C.G.S. § 150A, in effect at the time the dispute between Vass and the Board arose, is silent as to the time when a contested case commences. N.C.G.S. § 150A-2(2) defines contested case as

> any agency proceeding, by whatever name called, wherein the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for an adjudicatory hearing.

N.C.G.S. § 150A-2(2) (1983). Under this definition there are two essential elements in determining when a contested case is commenced: (1) there must be an agency proceeding, (2) wherein the rights of a party must be determined. *Lloyd v. Babb*, 296 N.C. 416, 424-25, 251 S.E.2d 843, 850 (1979).

[1]   Under the criteria of *Lloyd*, because N.C.G.S. § 135-39.7 provided a procedure whereby the Board was authorized to resolve medical coverage disputes, a contested case commenced when the dispute was presented to the Board in Vass' appeal. N.C.G.S. § 135-39.7 (Supp. 1983) (person aggrieved by claims contractor's resolution of medical claim entitled to appeal to Board). Thus when Vass, on 14 November 1984, appealed the decision of EDS Federal to deny coverage for the radial keratotomy procedure, a contested case was commenced. Therefore, because this contested case was commenced prior to 1 January 1986, the dispute between the Board and Vass was governed by N.C.G.S. § 150A. *Pinewood Manor Mobile Homes, Inc. v. North Carolina Manufactured Hous. Bd.*, 84 N.C. App. 564, 566, 353 S.E.2d 231, 232, *disc. rev. denied*, 319 N.C. 674, 356 S.E.2d 780 (1987). Accordingly, it was error to resolve this dispute according to N.C.G.S. § 150B.

However, because this error does not prejudice the Board, it did not constitute reversible error. *In re Estate of Tucci*, 104 N.C. App. 142, 151, 408 S.E.2d 859, 865 (1991) (party seeking relief

on appeal must show both error and that error was prejudicial). The Board contends that allowing Vass to proceed under N.C.G.S. § 150B prejudices the Board because it affords him the opportunity to seek judicial review when he would be time-barred from doing so under N.C.G.S. § 150A. N.C.G.S. § 150A-45 (1983) (party to agency dispute waives right to seek judicial review if petition not filed in superior court within thirty days of final agency decision). We disagree. Because the Board never entered a final decision denying Vass' claim, the time for seeking judicial review had not yet accrued. *In re Appeal of Harris*, 273 N.C. 20, 27, 159 S.E.2d 539, 545 (1968) (right to petition for judicial review continues until provisions of statute strictly complied with).

The decision of the Board was not final because the record does not reflect that the decision was based on review of an official record created at a hearing where all parties are allowed to present evidence and legal arguments. N.C.G.S. §§ 150A-23, -36, -37 (1983). Nor did the decision include findings of fact and conclusions of law as required by N.C.G.S. § 150A-36. N.C.G.S. § 150A-36 (1983). Therefore, because the time to petition for judicial review under N.C.G.S. § 150A never accrued and thus was not waived, the application of N.C.G.S. § 150B does not prejudice the Board.

Furthermore, the Board is not prejudiced because the hearing afforded Vass under N.C.G.S. § 150B is different than that under N.C.G.S. § 150A. We acknowledge that N.C.G.S. § 150B provides that the case shall be heard before an ALJ and that N.C.G.S. § 150A provides that the hearing be before the Board. N.C.G.S. §§ 150A-23, -36 (1983); N.C.G.S. §§ 150B-23, -36 (1991). However, in both instances the Board is required to make the final decision and did so in this case. N.C.G.S. § 150A-36 (1983); N.C.G.S. § 150B-36 (1991). Thus, because no prejudice accrued to the Board from the application of N.C.G.S. § 150B to this dispute, the error was harmless. Accordingly, we review these proceedings under N.C.G.S. § 150B.

II

The scope of this Court's appellate review of the trial court's decision is the same as that utilized by the trial court. *Jarrett v. North Carolina Dep't of Cultural Resources*, 101 N.C. App. 475, 478, 400 S.E.2d 66, 68 (1991). In reviewing a final agency decision, we must determine whether the decision of the administrative agency should be reversed because the substantial rights of the peti-

tioner may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C.G.S. § 150B-51 (1991). Our review is further limited to assignments of error to the trial court's order. *Watson v. North Carolina Real Estate Comm'n*, 87 N.C. App. 637, 640, 362 S.E.2d 294, 296 (1987). Here the Board assigns as error that the Board's decision was properly supported by substantial evidence and we limit our review to that issue.

When reviewing an agency decision to determine whether it is supported by substantial evidence, we must apply the whole record test, taking all evidence into account to determine whether there is substantial evidence that a reasonable mind might accept as adequate to support the agency decision. *Walker v. North Carolina Dep't. of Human Resources*, 100 N.C. App. 498, 502-03, 397 S.E.2d 350, 354 (1990), *disc. rev. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). If the agency decision is not supported by substantial evidence, the decision must be reversed or modified. N.C.G.S. § 150B-51 (1991).

In Vass' case, the Board's decision concerning medical coverage is governed by N.C.G.S. §§ 135-40.6 to -40.7. N.C.G.S. § 135-40.6 provides that the Medical Plan will pay for surgery. Under covered surgical benefits is listed, among others, "[c]utting procedures." N.C.G.S. § 135-40.6(5)(a) (Supp. 1983). The Medical Plan will not cover "[c]osmetic surgery or surgery solely for beautifying purposes." N.C.G.S. § 135-40.6(6)(b) (Supp. 1983). Nor will benefits be paid for surgical procedures "specifically listed by the American Medical Association or the North Carolina Medical Association as having no medical value." N.C.G.S. § 135-40.6(6)(h) (Supp. 1983). Eyeglasses are specifically excluded from coverage. N.C.G.S. § 135-40.6(9)(f) (Supp. 1983). The Medical Plan also generally ex-

cludes payment for any charges which are not "certified by a physician who is attending the individual as being required for the necessary treatment of the injury or disease." N.C.G.S. § 135-40.7(5) (Supp. 1983). The Medical Plan is also authorized to deny costs "as part of its overall program of . . . cost containment." N.C.G.S. § 135-40.7(16) (Supp. 1983). Nowhere in the list of exclusions to medical coverage is it specifically stated that radial keratotomy in not a covered procedure.[1]

In rendering its final decision pursuant to its governing statutes that radial keratotomy was not a covered procedure, the Board made thirty-one findings of fact. The most important of these findings of fact were that radial keratotomy: (1) was not required to treat a disease or accidental bodily injury; (2) was a substitute for eyeglasses; (3) was primarily for convenience and cosmetic purposes; (4) was listed by the American Medical Association and other medical agencies as an investigational procedure only, and therefore had no medical value; and (5) that EDS Federal, under its contract with the Medical Plan, was required to determine which medical procedures were covered, and had established that radial keratotomy was not a covered procedure.

[2] We have reviewed the entire record and find that there is not substantial evidence in the record to support the Board's decision to refuse coverage. The record shows, through the affidavits of Vass and his doctors, that the radial keratotomy was not performed for cosmetic reasons nor as a substitute for eyeglasses. In the opinion of Vass' ophthalmologist, radial keratotomy was medically necessary to stop the worsening of the myopic condition in his right eye, which had become an impediment to his ability to work and perform his daily activities. It is uncontested that radial keratotomy requires incisions or cuts to the patient's cornea, which is a cutting procedure and therefore surgery. There is no evidence in the record to support the Board's contention that the American Medical Association or the North Carolina Medical Association has characterized radial keratotomy as having no medical value. Indeed, an affidavit from the Program Administrator of the American Medical Association's Technology Assessment Department states that "[t]he American Medical Association does not take, and to

---

1. We note that since this controversy arose the legislature has now specifically provided that radial keratotomy will not be covered by the Medical Plan. N.C.G.S. § 135-40.6(j) (1992).

the best of my knowledge has never taken, the position that radial keratotomy has no medical value." An affidavit from the North Carolina Medical Association contains a similar statement. Although evidence was presented which showed that many medical experts and the American Medical Association consider the procedure to be either investigative or experimental, this does not equate to a declaration that radial keratotomy is of no medical value. It is not disputed that EDS Federal is authorized by N.C.G.S. § 135-40(b) to determine medical benefits for the Medical Plan, but nowhere is it suggested that EDS Federal is authorized to deny benefits other than in conformity with the statutory language in N.C.G.S. §§ 135-40.6 to -40.7. N.C.G.S. § 135-40(b) (Supp. 1983). Nor does any evidence in the record suggest that the Board initially denied the claim as part of an overall program of cost containment.

In summary, a review of all the evidence in the record reveals that substantial evidence does not exist in the record to support the Board's conclusion that the radial keratotomy was not a covered procedure under the Medical Plan. The record in fact supports the contrary conclusion that the Medical Plan did provide coverage for the radial keratotomy procedure.

Accordingly, the order of the trial court reversing the Board's decision is

Affirmed.

Judges ARNOLD and WELLS concur.