JANE A. WALLACE, PETITIONER v. BOARD OF TRUSTEES, LOCAL GOVERNMENT
EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT

No. COA00-767

(Filed 7 August 2001)

## 1. Administrative Law— final agency decision—standard of review—de novo

The trial court properly applied the de novo standard in its review of a final agency decision of the Board of Trustees Local Governmental Employees Retirement System (Board) concluding that petitioner was not entitled to disability retirement benefits for the months of March 1997 and October 1997 through May 1999, because: (1) allegations that the tribunal used an improper form of review are questions of law, and not fact; and (2) petitioner made allegations of errors of law with respect to every conclusion of law made by the Board.

## 2. Venue— change—lack of jurisdiction—no prejudice

Although the trial court of Durham County erred by denying the Board of Trustees Local Governmental Employees Retirement System's (Board) motion to dismiss based on lack of jurisdiction to order a change of venue to Wake County Superior Court, the error did not prejudice the Board because the Board argued that petitioner should have filed her petition for judicial review in either Wake County or the county in which she resided as required by N.C.G.S. § 150B-45.

## 3. Pensions and Retirement— disability benefits—continued service

The trial court erred by reversing respondent Board of Trustees Local Governmental Employees Retirement System's (Board) final agency decision concluding that petitioner was not entitled to disability retirement benefits for the months of March 1997 and October 1997 through May 1999 when petitioner continued to work although in a part-time capacity based on her disability, because: (1) our Legislature did not intend that an employee be allowed to continue rendering service with the Retirement System and also receive disability benefits; (2) N.C.G.S. § 128-21(19) provides that in order for a member's retirement to become effective in any month, the member must render no service at any time during that month; and (3) petitioner

worked more than 1,000 hours per year which effectively eliminated her from qualifying to receive a disability retirement allowance, N.C. Admin. Code tit. 20, r. 2C.0802.

**4. Estoppel— governmental agency—disability retirement**

The trial court erred by finding that respondent Board of Trustees Local Governmental Employees Retirement System was estopped from denying petitioner disability retirement benefits when petitioner continued to work although in a part-time capacity based on her disability, because: (1) a governmental agency is not subject to estoppel to the same extent as a private individual or a private corporation; and (2) estoppel would override the statute's mandate that no one can receive disability retirement benefits without being retired.

Appeal by respondent from orders entered 14 October 1998 and 11 April 2000 by Judges Donald W. Stephens and Henry W. Hight, Jr., respectively, in Durham County Superior Court and Wake County Superior Court, respectively. Heard in the Court of Appeals 18 April 2001.

*Lynn A. Andrews for petitioner-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General Robert M. Curran, for respondent-appellant.*

HUNTER, Judge.

Respondent-appellant Board of Trustees Local Governmental Employees Retirement System ("Board") appeals the trial court's reversal of its final agency decision in which the Board decided Jane A. Wallace ("petitioner") was not entitled to disability retirement benefits for the months of March 1997 and October 1997 through May 1999. Having reviewed the whole record before us, we reverse the trial court's ruling.

Facts pertinent to this appeal are as follows: Petitioner "suffers from a bipolar, or manic-depressive, mood disorder." In 1988, she gained full-time employment with Trend Mental Health, Developmental Disabilities, and Substance Abuse Authority Center ("Trend") and "became a contributing member of the Retirement system." During the first several years with Trend, petitioner was able to manage her illness with medication and received several promotions, moving into a management-level position in 1994. However, "[b]egin-

WALLACE v. BOARD OF TR.

[145 N.C. App. 264 (2001)]

ning in 1994, [petitioner]'s illness became increasingly resistant to medication. During 1996, [she] experienced considerable difficulties in performing her duties as Substance Abuse Program Coordinator. By January of 1997, [she] was unable to perform [her required] duties." Thus in February 1997, with the permission of her employer, petitioner left her full-time management position and began working as a part-time substance abuse counselor. This change was both a reduction in pay and a demotion in position for petitioner.

Also in February 1997, petitioner submitted to her employer an application for disability retirement. Under the section of the application entitled "Employer Certification" was noted that petitioner "[h]as not terminated" and that "[e]mployee is still employ[ed]." Additionally, in forwarding petitioner's disability application to the Retirement System, Trend's human resources director, Rick Wagner, attached a cover letter to the application in which he stated:

> Jane Wallace was out of work for an extended period of time due to health reasons but she has returned to work on a reduced schedule. She requested reclassification from 100% FTE Substance Abuse Program Supervisor at $33,074 to 71% FTE Substance Abuse Counselor II position at $22,391. *This change reduces her work time, salary, and supervisory responsibilities and she feels that this may qualify her for disability benefits. At this time she has not indicated if she plans to stop working due to her disability.*

(Emphasis added.) In response, the Retirement System returned petitioner's application attaching an "Information Checklist" which stated that in order to "fully process [petitioner's] application for retirement," the application needed to be notarized and certain payroll information, which had been requested on the form but was missing, needed to be completed.

Petitioner sent a second disability retirement application to the Retirement System on 4 March 1997, which included the information requested by way of the "Information Checklist." Again, in the section entitled "Employer Certification," the words "full time" were inserted "[w]here the form asked for the [petitioner's] last day of employment." Additionally, in response to the request to "[i]ndicate last day [petitioner] worked (physically on job)," "2/8/97 [—] employee is still employed part time in reduced capacity" was clearly written in the space provided.

The Medical Board "approved [petitioner's] application for disability retirement pursuant to N.C. Gen. Stat. § 128-27(c) and informed the Petitioner of its approval by letter dated April 22, 1997." Petitioner was then notified of her approval, to be effective 1 April 1997. Thereafter, petitioner began receiving her retirement benefits. Subsequently, "[o]n October 27, 1997, the Retirement System notified Petitioner by letter that it was suspending payment of her retirement benefits, because as a contributing member of the system, she was not eligible under the applicable statutes to also receive retirement benefits." The Retirement System further advised petitioner that she was to repay the benefits she had already been paid between 1 April and 30 September 1997, which amounted to $7,236.48.

In response, petitioner filed for a contested case hearing which was held before Administrative Law Judge ("ALJ") Brenda Becton. On behalf of the Board, Marshal Barnes, Deputy Director of the Retirement System, testified that it is possible for a member of the Local Government System to be approved for disability retirement benefits and still work part-time

[p]rovided that they work less than 1,000 hours per year[ and] depend[ing] on where they're working . . . . The statutes governing disability retirement under the Local System do provide a person to have a certain amount of earnings without affecting their benefit[ but] it does matter who they go back to work with. If they remain working in the Local Governmental System, they would have to be in a position in which it did not require participation [in the Retirement System].

Mr. Barnes continued:

[T]he definition of retirement under the statute requires a person to terminate covered employment to be entitled to a retirement allowance.

. . .

[Covered employment being defined a]s 1,000 hours or more per year in the Local System. . . .

. . .

The current [benefit] booklet that I have is dated July 1996, and on page 3, it says, "When you join, you become a member of the Retirement System on your date of hire if you are a permanent

employee of a participating unit and your duties require that you work at least 1,000 hours a year."

Then, in response to whether the benefit booklet is "distributed to all members of the Local Retirement System," Mr. Barnes answered:

[W]henever we reprint the benefit booklet, which is generally— sometimes we do it annually, but, generally, it's about every two years that we update that booklet. And whenever we update that, it is distributed to each employer that participates in the System, and we provide them more than enough copies to distribute to their employees.

However in her recommended decision, upon making appropriate findings Judge Becton concluded, among other things, that:

2. In the present case, it is clear that at the time [petitioner] was approved for disability, she was able to engage in gainful employment, albeit in a limited capacity and at reduced hours from her usual occupation. The [applicable] statute specifically provides that the ability to engage in gainful employment does not preclude the receipt of disability benefits. . . .

Thus, Judge Becton recommended that the Final Decision of the Board:

(1) reinstate [petitioner]'s disability payments effective March 1, 1997, pursuant to N.C. Gen. Stat. § 128-27(c)[;] (2) schedule [petitioner]'s disability case for periodic medical review, pursuant to N.C. Gen. Stat. § 128-27(e); and (3) any adjustment of [petitioner]'s disability allowance which may be required be prospective only, pursuant to N.C. Gen. Stat. § 128-27(e)(1) and 20 NCAC 2C.0503.

Nevertheless, in its final agency decision, the Board rejected the majority of Judge Becton's findings and conclusions, and concluded, solely on the basis of N.C. Gen. Stat. § 128-21 and N.C. Admin. Code tit. 20, r. 2c.0802 (September 1977), that:

3. At no time relevant to her application for retirement has the Petitioner ever "retired" as that term is defined in the applicable statutes and rules. Therefore, at no time has the Petitioner been qualified to receive disability retirement benefits.

4. The Retirement System is authorized to seek reimbursement from any member or beneficiary respecting any overpay-

ment of benefits, pursuant to G.S. § 128-27(I). Petitioner has erroneously been overpaid benefits in the amount of $7,236.48.

Petitioner petitioned the superior court for judicial review on the basis that: the Board had failed to review the entire record before it, as required by law; that the Board had unlawfully gone outside of the official record (evidenced by the fact that "some of [its] findings . . . were not supported by any evidence contained in the official record"); that statutory law quoted by the Board in support of its final agency decision does not apply to the situation at hand and does not address the petitioner's claim to disability retirement benefits; that the Board's decision is "[u]nsupported by substantial evidence admissible," and; that the Board's decision is arbitrary and capricious.

After making many detailed findings, including that Judge Becton's findings of fact contained in her ALJ recommended decision were supported by substantial admissible evidence of record, and that the Board "did not consider the 'official record' as defined by N.C.G.S. 150B-37 and 150B-42(b) . . . despite statements to the contrary contained in the Final Agency Decision[,]" the trial court concluded:

3. That the [Board] unconstitutionally interfered with the Petitioner's vested rights in her pension plan . . . .

4. That the [Board] exceeded its statutory authority or jurisdiction [in] den[ying] the Petitioner's request for disability benefits . . . [and in]

5. . . . discontinu[ing] the Petitioner's disability benefits . . . .

. . .

9. That the [Board] erred when it failed to interpret N.C.G.S. 128-27 consistent with the overall policies of the retirement, disability and death benefit schemes.

10. That the [Board]'s findings, inferences, conclusions and decisions are unsupported by substantial evidence admissible under N.C.G.S. 150B-29(a), 150B-30, or 150B-31 in view of the record as submitted . . . .

Thus, the trial court reversed the Board's final agency decision and ordered the Board to pay petitioner the 21 months of disability benefits she sought. The Board appeals.

It must be noted that "[b]y May 1999, [petitioner]'s health had deteriorated to the point that she was forced to leave her part-time job at Trend. She reapplied for and was again granted disability benefits effective June 1, 1999." (This final grant of disability benefits is not at issue.) Additionally, in its brief to this Court, the Board states that it "will forego seeking reimbursement of the benefits paid [to petitioner] in error from April through September, 1997. Thus, the only issue before this Court is whether Petitioner is entitled to benefits for the months of March, 1997 and October, 1997 through May, 1999."

[1] The Board brings forward four assignments of error for this Court's review. First, we choose to address the Board's contention that the trial court utilized the wrong standard of appellate review. In N.C. Gen. Stat. § 150B-51, our General Assembly has set out clear instructions for a trial court to follow when acting as an appellate judicial reviewer of a final agency decision:

(a). . . In reviewing a final decision in a contested case in which an administrative law judge made a recommended decision, the court shall make two initial determinations. First, the court shall determine whether the agency heard new evidence after receiving the recommended decision. . . . Second, if the agency did not adopt the recommended decision, the court shall determine whether the agency's decision states the specific reasons why the agency did not adopt the recommended decision. . . .

(b). . . After making the determinations, if any, required by subsection (a), the court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51 (1999). Additionally:

*"The proper standard of review [for a trial court] under [N.C. Gen. Stat. § 150B-51(b)] depends upon the issues presented on appeal [from the agency's final decision]. If appellant argues the agency's decision was based on an error of law, then 'de novo' review is required.* If however, appellant questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test."*

*In Re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) (citations omitted) (emphasis in original). . . . Then, once the trial court has entered its order, should one of the parties appeal to this Court,

"[o]ur task, in reviewing a superior court order entered after a review of a board decision is two-fold: (1) to determine whether the trial court exercised the proper scope of review, and (2) to review whether the trial court correctly applied this scope of review."

*Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999).

*Jordan v. Civil Serv. Bd. of Charlotte*, 137 N.C. App. 575, 577, 528 S.E.2d 927, 929 (2000) (emphasis added).

We first note that in accordance with the above statute, on the very first page of its order, the trial court plainly states, "[t]he Court, having reviewed the record in this cause and having considered the arguments of both parties, hereby makes the following **INITIAL DETERMINATIONS**, *pursuant to N.C.G.S. 150B-51(a)*[.]" (Emphasis in original and emphasis added.) Those initial determinations were that the Board did not hear new evidence following the contested case hearing, and that the Board did state specific reasons why it did not adopt the ALJ's recommended decision. Thus, the trial court complied with the initial determination procedures outlined in

N.C. Gen. Stat. § 150B-51(a). Second, we note that although the trial court reversed and modified the Board's decision, it did so pursuant to N.C. Gen. Stat. § 150B-51(b), specifying in each finding and/or conclusion in what way it found the Board's inferences, conclusions, or decisions were: "unconstitutional[]"; "exceeded its statutory authority or jurisdiction"; based "on unlawful procedure," and; "unsupported by substantial evidence admissible under N.C.G.S. 150B-29(a), 150B-30, or 150B-31 in view of the [entire] record as submitted," and which resulted in "the substantial rights of the Petitioner hav[ing] been prejudiced. Therefore, we hold that the trial court properly followed the statutory procedures laid out in N.C. Gen. Stat. § 150B-51.

Nevertheless, the Board argues that "[i]n this instance, the trial court's order is silent as to the standard of review employed. It is therefore impossible to tell whether the court utilized the appropriate scope of review." We disagree. Looking to petitioner's allegations in her appeal to the trial court *(In Re Appeal by McCrary,* 112 N.C. App. 161, 165, 435 S.E.2d 359, 363), the record reveals that petitioner excepted to many of the Board's findings of fact on the basis that the Board did not review *any* of the record before it. Although these exceptions would seem to be allegations regarding whether the Board's decision was supported by the evidence and as such, require application of the "whole record" test, *id.,* allegations that the tribunal utilized an improper form of review are questions of law—not fact. *See Kinsey v. Spann,* 139 N.C. App. 370, 372, 533 S.E.2d 487, 490 (2000). Thus, it was proper in the present case for the trial court to apply a *de novo* review.

This is further borne out by petitioner's allegations that the Board's conclusions of law, are erroneous on the basis that the Board essentially misapplied and/or misinterpreted the statutory provisions regarding disability retirement and "the requirements for entitlement to a disability retirement allowance [as] set forth in G.S. 128-27(c) . . . subject . . . to . . . G.S. 128-27(e) . . . ." These contentions are clearly allegations of errors of law, and because petitioner's alleged errors of law are with respect to every conclusion of law made by the Board, the trial court was obligated to apply a *de novo* review to the entire case before it. *Act-Up Triangle v. Commission for Health Services,* 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). Thus, in laying out its very specific and detailed findings of fact and conclusions of law, we believe the record evidences that the trial court applied a standard of *de novo* review. We hold this was the proper standard of review.

**[2]** We next address the Board's assignment of error arguing that the trial court erred in denying the Board's motion to dismiss for lack of jurisdiction. We note that although the Board argues that "the State of North Carolina cannot be sued except with its consent or upon its waiver of immunity[ o]therwise, this immunity is absolute and unqualified," it is not personal or subject matter jurisdiction the Board contends. Instead, the Board contends that the trial court of Durham County lacked jurisdiction to order a change in venue to Wake County Superior court. We agree. However, because the error did not prejudice the Board, it does not constitute reversible error.

The Board is correct in its contention that the Act "provides for a specific waiver of this immunity." Further, it is true that statutory provisions providing for the waiver of the right to judicial review under certain restrictions should be construed strictly. *In re Appeal of Harris*, 273 N.C. 20, 159 S.E.2d 539 (1968). However, this Court has long held that the party seeking relief on appeal, in this case the Board, must show not only error, but also that the error was prejudicial. *Vass v. Bd. of Trustees of State Employees' Medical Plan*, 108 N.C. App. 251, 255, 423 S.E.2d 796, 799 (1992). Thus, in the case at bar, the Board has failed to show it was prejudiced by the change in venue in that the Board does not argue prejudice at all, it simply argues error. Moreover, we find that petitioner's motion to change venue actually resolves the Board's contention. It is the Board's argument that petitioner should have filed her petition for judicial review in either Wake County or the county in which she resided, as required by N.C. Gen. Stat. § 150B-45 (1999). Thus, petitioner's motion to change venue to Wake County Superior court and the trial court's grant of that motion settled the Board's argument by placing jurisdiction with the Wake County Superior Court. Again, we note the Board has failed to allege any prejudice or damage suffered because of the improper venue. Therefore, this assignment is overruled.

**[3]** We address the Board's final two assignments of error together. The first being, the Board assigns error to the trial court's finding and concluding that, in making it's final agency decision, the Board failed to review and consider the entire official record before it. It is the Board's contention that its "decision itself states that it was based upon '[t]he Board of Trustees, having reviewed the Recommended Decision and the Record in this matter, and having heard the arguments of the parties.' " Secondly, the Board argues that the trial court erred in awarding disability benefits to petitioner for a period of time when she was still employed part-time with Trend.

The scope of this Court's appellate review of the trial court's decision is the same as that utilized by the trial court. *Jarrett v. North Carolina Dep't of Cultural Resources*, 101 N.C. App. 475, 478, 400 S.E.2d 66, 68 (1991). . . .

. . .

> [Additionally, o]ur review is . . . limited to assignments of error to the trial court's order. *Watson v. North Carolina Real Estate Comm'n*, 87 N.C. App. 637, 640, 362 S.E.2d 294, 296 (1987). . . .

*Vass*, 108 N.C. App. at 256-57, 423 S.E.2d at 800.

In the case at bar, the Board assigns as error the trial court's holding that petitioner was statutorily entitled to benefits and that the Board failed to utilize the entire official record in arriving at its final agency decision regarding petitioner's right to disability benefits. These are allegations of errors of law and as such, we must apply a *de novo* review to the record before this Court. *Act-Up Triangle*, 345 N.C. at 706, 483 S.E.2d at 392.

The Board is correct that the statutory definition of retirement is the "withdrawal from active service with a retirement allowance granted under the provisions of th[e governing] Article[, and that i]n order for a member[-employee]'s retirement to become effective in any month, the member[-employee] must render no service at any time during that month." N.C. Gen. Stat. § 128-21(19) (1999). Further:

> (10) "Employee" shall mean any person who is regularly employed in the service of and whose salary or compensation is paid by the employer as defined in subdivision (11) of this section, whether employed or appointed for stated terms or otherwise . . . . In all cases of doubt the Board . . . shall decide who is an employee.

> (11) "Employer" shall mean any county, incorporated city or town . . . and the State Association of County Commissioners. "Employer" shall also mean any separate, juristic political subdivision of the State as may be approved by the Board . . . .

> . . .

> (22) "Service shall mean service as an employee as described in subdivision (10) of this section and paid for by the employer as described in subdivision (11) of this section.

N.C. Gen. Stat. § 128-21(10), (11), (22). Conversely, there is no definition in the Act for "disability retirement." However regarding "disability retirement benefits," the Act states that:

> Upon the application of a member[-employee] or of his employer, any member[-employee] who has had five or more years of creditable service may be retired by the Board . . . on a disability retirement allowance: Provided, that the medical Board, after a medical examination of such member[-employee], shall certify that such member[-employee] is mentally or physically incapacitated for the further performance of duty, that such incapacity was incurred at the time of active employment and has been continuous thereafter, that such incapacity is likely to be permanent, and that such member[-employee] should be retired; Provided further the medical board shall determine if the member[-employee] is able to engage in gainful employment and, if so, the member[-employee] may still be retired and the disability retirement allowance as a result thereof shall be reduced as in subsection (e) . . . .

N.C. Gen. Stat. § 128-27(c) (1999).

Our Courts have long held "[i]t is elementary that when a statute contains a definition of a word or term used therein, such definition, unless the context clearly requires otherwise, is to be read into the statute wherever such word or term appears therein." *Smith v. Powell, Comr. of Motor Vehicles*, 293 N.C. 342, 345, 238 S.E.2d 137, 140 (1977). Nevertheless, petitioner argues that the term "retired" has a different meaning in N.C. Gen. Stat. § 128-27, the disability statute. It is petitioner's position that because N.C. Gen. Stat. § 128-27(e)(1) (2001) clearly requires the Board to "determine whether a disability beneficiary is engaged in or is able to engage in a gainful occupation," N.C. Gen. Stat. § 128-27(e)(1) (1999), the statute thereby allows a member to continue to work—without actually retiring—as long as she does so in a different capacity than before. We disagree.

The Act clearly provides for:

> (e) Reexamination of Beneficiaries Retired on Account of Disability.—Once each year during the first five years following retirement of a member on a disability allowance, and once in every three-year period thereafter, the Board . . . may, and upon his application shall, require any disability beneficiary who has not yet attained the age of 60 years to undergo a medical examination . . . .

WALLACE v. BOARD OF TR.

[145 N.C. App. 264 (2001)]

(1)  The Board . . . shall determine whether a disability beneficiary is engaged in or is able to engage in a gainful occupation paying more than the difference . . . between his disability retirement allowance and the gross compensation earned as an employee during the 12 consecutive months in the final 48 months of service prior to retirement producing the highest gross compensation excluding any compensation received on account of termination. . . .

(2)  Should a disability beneficiary under the age of 62 years be restored to active service at a compensation not less than his average final compensation, his retirement allowance shall cease, he shall again become a member of the Retirement System and he shall contribute thereafter at the contribution rate which is applicable during his subsequent membership service. . . .

. . .

(3a)  *Notwithstanding the foregoing, should a beneficiary who retired on a disability retirement allowance be restored to service as an employee, then the retirement allowance shall cease* as of the first day of the month following the month in which the beneficiary is restored to service and the beneficiary shall become a member of the Retirement System and shall contribute thereafter as allowed by law at the uniform contribution payable by all members. . . .

N.C. Gen. Stat. § 128-27(e)(1), (2), (3a) (emphasis added).

In light of the above subsection (3a), we believe that our Legislature did not intend that an employee be allowed to continue rendering service within the Retirement System *and also* receive disability benefits. Instead, the statutory requirement that "[i]n order for a member's retirement to become effective in any month, the member must render *no* service at any time during that month," cannot be ignored. N.C. Gen. Stat. § 128-21(19) (emphasis added). Thus, we cannot agree with the ALJ's interpretation of the disability retirement statutes that, although petitioner continued working at Trend, it was *not in the same "service"* she previously provided (and could no longer provide due to her disability). Additionally, we agree with the Board that a member cannot be *both* a contributing member of the

system and receive payment for disability retirement. Therefore, we find that petitioner did not effectively "retire" (as defined in the Act) when she changed jobs, lessening her hours and being demoted.

Moreover, N.C. Admin. Code tit. 20, r. 2C.0802 (September 1977) clearly states: "An . . . employee in a regular position, the duties of which require not less than 1,000 hours of service per year shall be an employee as defined in G.S. 128-21(10)." As testified to by the Retirement System's Deputy Director, Mr. Barnes, this rule is outlined in the local government employees' handbook which is made available to "each employer that participates in the System . . . enough copies to distribute to their employees." Thus, we hold that where petitioner worked more than 1,000 hours per year—for any local government employer as defined by N.C. Gen. Stat. § 128-21(11)—petitioner would have effectively eliminated herself from qualifying to receive a disability retirement allowance.

From our reading of the Act we believe that the Legislature intended that a member-employee getting a disability retirement allowance for "withdraw[ing[ from active service," N.C. Gen. Stat. § 128-21(19), should not be allowed to continue providing similar "[s]ervice," N.C. Gen. Stat. § 128-21(22). Thus, we find that petitioner did not properly retire from service and as such, petitioner was not entitled to disability benefits pursuant to N.C. Gen. Stat. § 128-27(e). Having so found, we need not address the Board's argument that it reviewed the entire official record before it.

[4] Finally, as to the Board's argument that the trial court erred in finding that the Board was "estopped from denying the Petitioner disability retirement benefits," we agree that the trial court did so err. We find the Board's brief to this Court persuasive in this regard:

> A governmental agency is not subject to an estoppel to the same extent as a private individual or a private corporation. *Henderson v. Gill*, 229 N.C. 313, 49 S.E.2d 754 (1948). Moreover, an estoppel may not arise against a governmental entity if such estoppel will impair the exercise of the governmental powers of the entity. *Washington v. McLawhorn*, 237 N.C. 449, 75 S.E.2d 402 (1953).

> [Thus, we agree that a]n estoppel argument does not apply [in the present case] because it would override what is clearly written in statute, that no one can receive disability retirement benefits without being retired. . . . The Supreme Court has

EATMAN LEASING, INC. v. EMPIRE FIRE & MARINE INS. CO.

[145 N.C. App. 278 (2001)]

stated that "[w]hen the right to do a thing depends upon legislative authority, and the Legislature has failed to authorize it, or has forbidden it, the approval of the doing of it by a ministerial officer cannot create a right to do that which is unauthorized or forbidden." *Glover v. Insurance Co.*, 228 N.C. 195, 198, 45 S.E.2d 45, 47 (1947). . . .

Having found that plaintiff was disqualified from receiving disability retirement benefits, the trial court's orders are

Reversed.

Judges WALKER and TYSON concur.