SHANNON N. JORDAN, Plaintiff v. CIVIL SERVICE BOARD FOR THE CITY OF CHARLOTTE ET AL, Defendants

No. COA01-418

(Filed 5 November 2002)

1. **Police Officers— discharge from employment—deadly force—imminent danger** .

A de novo review reveals that the trial court did not err by upholding defendant Civil Service Board's termination of plaintiff police officer's employment after plaintiff fatally shot a civilian in the course of his employment even though plaintiff contends the Board failed to find that plaintiff did not reasonably believe that deadly force was necessary to protect himself or a third party so as to make his use of force excessive, because: (1) though the better practice may have been to make a specific finding concerning the unreasonableness of plaintiff's belief, the Board's failure to do so was not fatal in light of the uncontroverted facts in this case; and (2) plaintiff's actions in firing into the rear of the vehicle after its passing were not based upon any reasonable fear of imminent danger under General Order #2 Section V.E., and therefore, those actions constituted excessive force under Rule of Conduct #28A.

2. **Constitutional Law— right to fair trial—due process— administrative tribunal both investigator and adjudicator**

A de novo review reveals that the trial court did not err by upholding defendant Civil Service Board's termination of plaintiff police officer's employment after plaintiff fatally shot a civilian in the course of his employment even though plaintiff contends he was denied his right to an impartial tribunal when the chairperson of the Board was simultaneously employed as an investigator for the Public Defender's Office which was representing the driver of the vehicle fired upon by plaintiff, because: (1) there is

no per se violation of due process when an administrative tribunal acts as both investigator and adjudicator on the same matter; and (2) plaintiff presented no evidence to rebut the showing of impartiality.

### 3. Constitutional Law— equal protection—differing levels of culpability—rational basis

The trial court did not err by upholding defendant Civil Service Board's termination of plaintiff police officer's employment after plaintiff fatally shot a civilian in the course of his employment even though plaintiff contends his equal protection rights were violated based on the fact that another officer who also fired upon the vehicle was suspended while plaintiff was terminated, because: (1) while both officers fired upon the vehicle, one of the shots fired by plaintiff struck and killed the passenger which gave the officers differing levels of culpability; and (2) the suspension of the other officer and the termination of plaintiff were founded upon a rational basis.

Appeal by plaintiff from judgment entered 15 February 2001 by Judge James U. Downs in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 January 2002.

*Lesesne & Connette, by Louis L. Lesesne, Jr. and Richard L. Hattendorf, for plaintiff-appellant.*

*Dozier, Miller, Pollard & Murphy, by W. Joseph Dozier, Jr., for defendants-appellees.*

TIMMONS-GOODSON, Judge.

This is the second time this case has been before this Court on appeal. Defendant Civil Service Board for the City of Charlotte ("Board") discharged plaintiff Shannon N. Jordan from his employment with the Charlotte-Mecklenburg Police Department ("Police Department") after plaintiff fatally shot a civilian in the course of his employment. The facts surrounding the shooting, and ultimately leading to plaintiff's dismissal are largely uncontroverted. Plaintiff was working at a license check point constructed by the Police Department in Charlotte on the evening of 8 April 1997, when a vehicle approached the check point but failed to stop. In response to a police radio broadcast from a fellow officer to stop the car, plaintiff positioned himself in the middle of the roadway. At that time, the vehicle was approximately ninety feet away and approaching plaintiff

at an undetermined rate of speed. Despite warnings from a nearby officer, Don Belz, plaintiff remained in the roadway as the vehicle continued in his direction. Plaintiff began to fire his weapon at the approaching vehicle. After firing three times into the front of the vehicle, plaintiff moved aside, only to fire two additional shots into the side of the vehicle. After the vehicle had passed, plaintiff fired five additional shots into the rear of the vehicle. One of the shots fired by plaintiff after the vehicle passed struck and killed a passenger in the vehicle.

Plaintiff was cited on 2 August 1997 by the Charlotte-Mecklenburg Chief of Police for alleged violations of certain departmental rules and procedures governing the use of deadly force by Charlotte-Mecklenburg police officers. Based upon these alleged violations, the Police Chief suspended plaintiff without pay and recommended that the Board terminate his employment. This matter was heard by the Board on 13-17 October 1997, and thereafter, the Board concluded that plaintiff had violated both the Rule of Conduct #28A and General Order #2, as alleged by the Police Chief.

Plaintiff appealed the Board's decision to the Mecklenburg County Superior Court, pursuant to Section 4.61(7)(e) of the Charter of the City of Charlotte. The superior court affirmed the Board's decision, and plaintiff appealed to this Court. This Court, "[u]nable to determine what standard of review the [superior] court applied," reversed and remanded this matter to the superior court, *Jordan v. Civil Serv. Bd. of Charlotte*, 137 N.C. App. 575, 575, 528 S.E.2d 927, 928 (2000) (hereinafter "*Jordan I*"), with instructions to "(1) make its own characterization of the issues before it, and (2) clearly set out the standard(s) for its review, delineating which standard it used to resolve each separate issue raised by the parties." *Id.* at 578, 528 S.E.2d at 930. On remand, the superior court conducted a *de novo* review of the Board's decision, and again, affirmed the decision of the Board. Once again, plaintiff appeals.

---

Our role now is to review the trial court's order for errors of law. *Crowell Constructors, Inc. v. North Carolina Dep't of Env't, Health & Natural Resources*, 107 N.C. App. 716, 719, 421 S.E.2d 612, 613 (1992), *disc. review denied*, 333 N.C. 343, 426 S.E.2d 704 (1993). As this Court stated in *Jordan I*, once the superior court has conducted its review and entered its order accordingly, "should one of the parties appeal to this Court '[o]ur task, in reviewing a superior court order entered after a review of a board decision is two-fold: (1) to

determine whether the trial court exercised the proper scope of review, and (2) to review whether the trial court correctly applied this scope of review.' " *Jordan I*, 137 N.C. App. at 577, 528 S.E.2d at 929 (quoting *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999)). "The scope of this Court's appellate review of the trial court's decision is the same as that utilized by the trial court." *Wallace v. Board of Tr.*, 145 N.C. App. 264, 274, 550 S.E.2d 552, 558, *disc. review denied*, 354 N.C. 580, 559 S.E.2d 553 (2001).

In determining whether the trial court utilized the proper scope of review, we must first determine the nature of the issues presented on appeal. "If it is alleged that an agency's decision was based on an error of law then a *de novo* review is required. A review of whether the agency decision is supported by the evidence, or is arbitrary or capricious, requires the court to employ the whole record test." *Walker v. North Carolina Dep't of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990) (citations omitted), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). " '*De novo* review' requires a court to consider a question anew, as if not considered or decided by the agency." *Dorsey v. UNC-Wilmington*, 122 N.C. App. 58, 62, 468 S.E.2d 557, 559 (citations omitted), *cert. denied*, 344 N.C. 629, 477 S.E.2d 37 (1996). "The court may 'freely substitute its own judgment for that of the agency.' " *Id.* (citations omitted). Indeed, it is the court's duty to do so, "mak[ing] its own findings of fact and conclusions of law." *Jordan I*, 137 N.C. App. at 577, 528 S.E.2d at 929. To the contrary, the "whole record," requires only the examination of all of the competent evidence before the court to determine if the agency's decision is supported by substantial evidence. *Id.*

Plaintiff has brought forth three arguments on appeal, which encompass some nine assignments of error. As conceded by plaintiff in his appellate brief, these arguments are premised upon errors of law committed by the Board. Therefore, the superior court was required to conduct a *de novo* review of the Board's decision. To that end, a reading of the superior court's order, reveals that the court did, indeed, employ the "*de novo*" standard of review, which is the proper standard in this case.

[1] Having determined that the proper standard of review was used by the superior court in its review of the Board's decision dismissing plaintiff, we now move to the question of whether the superior court properly applied the "*de novo*" standard in its review. In his first argu-

ment on appeal, which encompasses his first through fifth, and eighth and ninth assignments of error, plaintiff questions the legality of his dismissal. Specifically, plaintiff contends that the Board failed to find that he did not reasonably believe that deadly force was necessary to protect himself or a third party, under General Order #2 Section V.E., so as to make his use of force excessive. Without such a finding, plaintiff submits that his dismissal was not legal.

In the instant case, plaintiff was discharged based upon his violation of Rule of Conduct #28(A) and General Order #2 Section V.E. Rule of Conduct #28(A): Use of Force, mandates: "A. Officers shall use no more force than necessary in the performance of their duties and shall then do so only in accordance with Departmental procedures and the law." General Order #2: Section V; The Use of Force by Police Officers, provides in pertinent part:

E. Firing At Or From A Moving Vehicle

> This action may be used only when the officer reasonably believes that there is an imminent threat of serious bodily injury or death for the officer or for a third person if the officer does not do so. Before discharging a firearm at or from a moving vehicle, an officer must reasonably believe that the only reasonable means of protecting him or herself and/or a third party is the use of deadly force.

Again, the evidence surrounding the 8 April 1997 shooting, which led to plaintiff's discharge from employment is undisputed. Based upon this evidence, the Board made the following pertinent findings of fact:

19. At 9:58:27 p.m., Officer R.S. Cochran stated over the police radio "stop that car up there, stop that car." . . . At the same time officers in the street at State Street and Gesco Street were yelling loudly to stop the car. The commands to stop the car were heard by Officers Belz, Jordan and Mr. Colvin at their location.

. . . .

21. Officer Jordan left his position, proceeded past his police car and into the roadway. He stood a little past the center of the roadway in the eastbound lane of State Street. . . . Officer Jordan saw the white Corsica at the railroad tracks closest to Gesco Street, approximately sixty (60) yards from his location. Officer Jordan held his flashlight in his left hand and began shining it at the car, signaling the driver to stop.

22. The white Corsica . . . continued to accelerate toward Officer Jordan's position.

23. Officer Belz shouted to Officer Jordan to get out of the way and Officer Belz simultaneously began to move into the roadway. . . . At this point, Officer Jordan darted to his right toward the curb of the eastbound lane to avoid the car.

24. As Officer Jordan moved to his right, the car moved farther into the eastbound lane and continued to drive directly toward him.

. . . .

26. At this point, Officer Jordan believed his life was in danger and the only recourse was the use of deadly force to stop the threat to his life. Officer Belz also believed Officer Jordan was about to be run over and seriously injured or killed by this white Corsica.

27. Officer Jordan fired his service weapon twelve (12) times at the white Corsica. His shots struck the car as follows: three (3) times in the front of the car on the driver's side of the hood . . . , two (2) times in the driver's side . . . . and at least five (5) times in the rear . . . .

. . . .

32. One of the shots . . . fired at the rear of the vehicle by Officer Jordan struck passenger Carolyn Sue Boetticher in the back of the head, fatally injuring her. Ms. Boetticher was seated in the right front passenger seat.

. . . .

36. A departmental procedure prohibiting officers from stepping in front of automobiles when stopping vehicles does not exist.

37. Officers of the Charlotte-Mecklenburg Police Department commonly step in front of automobiles when attempting to stop vehicles.

38. Officer Belz saw Officer Jordan with his service weapon drawn when Officer Jordan was approximately ninety (90) feet away from the white Corsica.

39. Officer Belz warned Officer Jordan to "get out of the way" at least three times.

40. Officer Jordan placed himself in a position for the white Corsica to become an imminent threat of bodily harm.

41. Officer Jordan had time to remove himself from the threat of bodily harm.

42. Officer Jordan failed to use all options available to him by not removing himself from the threat of bodily harm; thereby making the use of deadly force unnecessary and unjustified.

Based upon these findings, the Board concluded:

1. Officer Jordan did not violate departmental procedures by stepping out in front of the white Corsica in an attempt to stop the vehicle.

2. Officer Jordan violated departmental procedure General Order #02, V.,E, "Firing At Or From A Moving Vehicle" by not using all available options to remove himself from the threat of deadly force.

3. Officer Jordan used excessive force when he discharged his service weapon at a white 1995 Chevrolet Corsica driven by Mr. Robert Gardner Lundy on State Street resulting in the death of Ms. Carolyn Sue Boetticher.

Based on these conclusions, the Board terminated plaintiff.

Plaintiff contends that the Board erred in terminating his employment with the Police Department without specifically finding that his belief that he was in imminent harm was unreasonable. Plaintiff fails to recognize, however, that the superior court, conducting *de novo* review of the Board's dismissal, was free to review the evidence and make its own findings and conclusions, which it did here. Though the superior court agreed with the decision of the Board to terminate plaintiff's dismissal, the court made the following pertinent findings in addition to those made by the Board:

(7) On April 8, 1967 [sic], Appellant Jordan fired his weapon twelve (12) times at a moving vehicle that failed to stop for a routine license check and at least five (5) of the twelve (12) shots were discharged by the said Jordan into the rear of the vehicle including the fatal bullet that struck the passenger, Carolyn Sue Boetticher, in the back of the head.

. . . .

(9) Before firing his weapon Appellant Jordan saw the vehicle moving toward him at a distance of at least 180 feet and he placed himself in a position in the path of travel of the vehicle causing the vehicle to become an imminent threat of bodily harm to himself.

(10) Officer Jordan had time to remove himself from the threat of bodily harm because he had been warned by Officer Belz to get out of the way at least three (3) times and further took the time to exercise the option of discharging his weapon three (3) times into the front of the vehicle.

(11) Once the front of the vehicle had passed Officer Jordan, there was no longer any imminent threat of serious bodily injury or death to himself or a third party.

The court went on to conclude, "The Board fairly interpreted Rule of Conduct #28A which prohibits the use of excessive force by concluding that Officer Jordan continued to discharge his weapon after there was no threat of bodily harm or death to himself or a third party thereby violating General Order #2, V., E. and consequently using excessive force in violation of Rule of Conduct #28 (A)."

Though the better practice may have been to make a specific finding concerning the unreasonableness of plaintiff's belief, the Board's failure to do so was not fatal in light of the uncontroverted facts in this case. *See Ballas v. Town of Weaversville*, 121 N.C. App. 346, 350-51, 465 S.E.2d 324, 327 (1996) (providing that, a failure to make a finding of fact is not fatal if the record sufficiently informs the court of the basis of decision of the material issues or if the facts are undisputed and different inferences are not permissible). The question of "[w]hether an officer has used excessive force is judged by a standard of objective reasonableness." *Clem v. Corbeau*, 284 F.3d 543, 550 (2002). Without any " 'precise definition or mechanical application,' " *id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481 (1979)), this test " 'requires careful attention to the facts and circumstances of each particular case.' " *Id.* (quoting *Graham v. Conner*, 490 U.S. 386, 396, 104 L. Ed. 2d 443, 455 (1989)).

In the instant case, the facts are not in dispute. Looking at this matter anew as we are required on *de novo* review, we conclude that plaintiff's exercise of force was excessive under the facts and circumstances of this record. Having placed himself in the pathway of the car, resulting in imminent danger to himself, plaintiff had suffi-

cient time to extricate himself from the pathway of the car, but failed to do so. Moreover, for any reasonable, prudent officer in the same or similar circumstances, the fear of imminent danger was removed after the vehicle sped past plaintiff at the check point on the evening of 8 April 1997. Accordingly, it naturally follows that plaintiff's actions in firing into the rear of the vehicle after its passing were not based upon any reasonable fear of imminent danger under General Order #2 V.E., and therefore, those actions constituted excessive force under Rule of Conduct #28A. We conclude that the Board's interpretation of Rule of Conduct #28A and General Order #2 V.E. was correct. Plaintiff's arguments to the contrary are unpersuasive.

[2] Having so concluded, we move to plaintiff's sixth assignment of error, by which he argues that his right to an impartial tribunal was denied when Valerie Woodard, the Chairperson of the Board, was simultaneously employed as an investigator for the Public Defender's Office, which was representing the driver, Mr. Lundy, of the vehicle fired upon by plaintiff. Plaintiff contends that Ms. Woodard's involvement in the case violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Law of the Land Clause of Article I, Section 19 of the North Carolina Constitution. We disagree.

As with plaintiff's first argument, *de novo* review is applicable here, and therefore, we consider this matter anew. *See Air-A-Plane Corp. v. North Carolina Dept. of Environment, Health and Natural Resources*, 118 N.C. App. 118, 124, 454 S.E.2d 297, 301 (stating that *de novo* review is required where constitutional violations or unlawful procedure is alleged), *disc. review denied*, 340 N.C. 358, 458 S.E.2d 184 (1995). In *Avant v. Sandhills Center for Mental Health*, 132 N.C. App. 542, 513 S.E.2d 79 (1999), this Court noted, "The United State Supreme Court has held " 'that there is no *per se* violation of due process when an administrative tribunal acts as both investigator and adjudicator on the same matter.' " Id. at 549, 513 S.E.2d at 84 (quoting *Hope v. Charlotte-Mecklenburg Bd. of Educ.*, 110 N.C. App. 599, 603-04, 430 S.E.2d 472, 474-75 (1993)). In *Hope*, the Court noted that mere allegations, "[a]bsent a showing of actual bias or unfair prejudice," are not sufficient to overcome the presumption that the Board acted properly. *Hope*, 110 N.C. App. at 604, 430 S.E.2d at 475. Similarly, our Supreme Court in *Crump v. Board of Education*, 326 N.C. 603, 392 S.E.2d 579 (1990), noted that a petitioner "must show that the decision-making board or individual possesses a disqualifying personal bias" to make out a due process claim premised upon a

theory of impartial decision-maker. *Id.* at 618, 392 S.E.2d at 586-87 (quoting *Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 354, 342 S.E.2d 914, 924 (1986), *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986)). "[T]o prove bias, it must be shown that the decision-maker has made some sort of commitment, due to bias, to decide the case in a particular way." *Evers v. Pender County Bd. of Educ.*, 104 N.C. App. 1, 15, 407 S.E.2d 879, 887 (1991).

Here, the record shows that a hearing was held on plaintiff's motion to have Ms. Woodard recuse herself. At the hearing, Ms. Woodard testified that she had not acquired any information about the instant case through her employment with the Public Defender's office. She also testified that she had no knowledge of the case, that she did not know anything about the parties, and that she could be fair and impartial at the hearing and serve on the Board. It was also shown that Ms. Woodard's supervisor at the Public Defender's Office sent a memo to the attorney working on the Lundy case, instructing the attorney not to discuss the case with Ms. Wooodard. As plaintiff presented no evidence to rebut this showing of impartiality, we hold the superior court did not err in concluding that the Board acted properly.

[3] As to plaintiff's equal protection argument, which corresponds to his seventh assignment of error, we hold similarly. Without belaboring the point, we note that there has been no showing of disparate treatment in this case to support an equal protection claim. While both plaintiff and Officer Belz fired upon the vehicle, one of the shots fired by plaintiff struck and killed the passenger. The two officers therefore enjoyed differing levels of culpability. As the suspension of Officer Belz and termination of plaintiff were founded upon a rational basis, we conclude that the accepted principles of equal protection were not violated. *See Durham Council of the Blind v. Edmisten, Att'y General*, 79 N.C. App. 156, 158, 339 S.E.2d 84, 86 (1986) (providing that the Equal Protection Clause is violated if two persons, similarly situated, are treated differently without rational basis), *appeal dismissed and cert. denied*, 316 N.C. 552, 344 S.E.2d 5 (1986).

Having so concluded, the superior court's order upholding the Board's termination of plaintiff's employment is affirmed.

Affirmed.

Judges MARTIN and BRYANT concur.