**TOWN OF WALLACE v. N.C. DEP'T OF ENV'T & NATURAL RES.**

[160 N.C. App. 49 (2003)]

TOWN OF WALLACE, Petitioner v. NORTH CAROLINA DEPARTMENT OF EN-
VIRONMENT AND NATURAL RESOURCES, DIVISION OF WATER QUALITY,
Respondent

No. COA02-1119

(Filed 19 August 2003)

**1. Administrative Law; Environmental Law— review of
agency final decision—whole record test**

There was substantial evidence in the record to support the
Environmental Management Commission's findings and conclu-
sions that a town permitted or caused a break to occur in its
sewer line by not inspecting or maintaining the line properly.
The trial court improperly applied the whole record test by
weighing the evidence and substituting its own evaluation for
the agency's.

**2. Administrative Law— superior court review of agency deci-
sion—burden of proof**

The trial court did not erroneously place the burden of proof
on the agency in reviewing an agency decision in a sewer dis-
charge case by finding that there was an absence of competent
evidence that petitioner caused or permitted the discharge and by
concluding that respondent failed to present substantial credible
evidence that petitioner caused or permitted the break in the
sewer line. The court's judgment does not relieve petitioner of its
burden of pleading sufficient facts to demonstrate respondent's
actions violated State law under N.C.G.S. § 150B-23(a).

**3. Injunction; Environmental Law— remedy at law—sufficient**

The trial court erred by permanently restraining and enjoin-
ing respondent from imposing a civil penalty upon or investigat-
ing petitioner for water quality violations. There was a complete
and adequate remedy at law under N.C.G.S. Ch. 150B, Article 4.

Appeal by respondent from judgment entered 11 March 2002
by Judge Gary E. Trawick in Duplin County Superior Court. Heard in
the Court of Appeals 14 May 2003.

*Burrows & Hall, by Richard L. Burrows, for petitioner-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney
General Francis W. Crawley and Assistant Attorney General
Anita LeVeaux, for respondent-appellant.*

STEELMAN, Judge.

The Town of Wallace ("petitioner" or "Wallace") operates a wastewater treatment plant under a national pollutant discharge elimination system ("NPDES") permit issued by the North Carolina Department of Environment and Natural Resources ("DENR") and the Division of Water Quality ("DWQ"). One of the main trunk lines into the plant runs along Little Rockfish Creek in Wallace.

On 16 June 1999, plant operator Doug Mears ("Mears") arrived at 7:00 a.m. to discover that little or no sewage was flowing into the treatment plant. Mears informed Paul Parker ("Parker"), Director of Public Works in Wallace, of the problem around 7:30 a.m. He also telephoned the DWQ office in Wilmington, North Carolina, where he left a message that the treatment plant was not receiving flow and that petitioner was investigating the problem to determine the cause.

About 8:30 a.m. on 16 June 1999, DWQ environmental chemist George Colby ("Colby") received Mears' message and telephoned Mears, who again stated that the plant was not receiving any flow of sewage. At 12:30 p.m., Colby telephoned Parker who informed him that a broken pipe had been discovered on the main trunk line running along Little Rockfish Creek. This pipe was 18 inches in diameter, was one and one-half to two inches thick and was constructed of reinforced concrete.

Colby arrived at the site of the break at approximately 1:15 p.m. and observed that Wallace employees had removed the section of the pipe where the break had occurred. He estimated the break caused one million gallons of untreated sewage to spill into Little Rockfish Creek. Colby sampled the waters of the creek near the sewage entry point, upstream and downstream on 16 June 1999 and for several subsequent days.

During a discussion about the break and subsequent spill, Parker told Colby that the trees and bushes surrounding the section of broken pipe had been cut for right-of-way maintenance three to four years prior to June 1999. However, petitioner had not inspected the interior of the pipes in that section by "TV"ing them with a special camera or any other method before the break occurred.

On 17 June 1999, Parker filed an initial written report in which he stated the break and sewage spill were caused by "[d]ecayed tree stump roots [that] grew into pipe joints and . . . high rainfall . . . ." This report also stated that tree stumps were removed from the area

TOWN OF WALLACE v. N.C. DEP'T OF ENV'T & NATURAL RES.

[160 N.C. App. 49 (2003)]

surrounding the broken pipe and that a temporary, sleeved channel was constructed with steel and plywood until a new section of pipe could be installed.

Parker later testified that during the excavation of the broken pipe, he observed a small, decayed tree stump on the ground above the break. He further testified that none of the roots had intruded any section of the pipe and that an inspection of the adjacent pipe sections revealed no roots growing into the pipe or other defects.

Petitioner had been under a Special Order of Consent ("SOC") with DENR to investigate and repair sections of its sewage collection system identified by engineers as needing repairs. However, the section of pipe which broke and caused the spill was not part of the SOC.

A laboratory analysis of the water samples collected by Colby showed violations of the State water quality standards for dissolved oxygen levels and fecal coliform bacteria. DWQ Director Kerr T. Stevens ("Stevens") investigated the incident and issued a decision assessing petitioner a $4,000.00 civil penalty for its violations of N.C. Gen. Stat. § 143-215.1(a)(6) (2001) plus investigation costs of $530.82.

On 13 March 2000, Wallace filed a contested case petition pursuant to N.C. Gen. Stat. § 150B-23 (2001) to challenge DWQ's assessment. After an administrative hearing, the administrative law judge ("ALJ") issued a recommended decision finding that the civil penalties had been assessed improperly. On 26 April 2001, the Environmental Management Commission ("EMC") issued the final agency decision in which it rejected the ALJ's recommendation but reduced the civil penalty to $2,000.00 plus investigation costs of $530.82.

Wallace petitioned for judicial review on 10 May 2001, seeking to have the EMC's final agency decision declared null and void. On 11 March 2002, the trial court filed its judgment reversing the EMC's final agency decision and permanently restraining and enjoining DENR from imposing any civil penalty or costs on petitioner. Respondent appeals the trial court's reversal of the EMC decision.

I.

[1] Respondent contends the trial court erred in reversing the EMC's final agency decision. Specifically, it argues the trial court erred in concluding there was insufficient credible evidence that petitioner

caused or permitted the break in the sewer line to occur by failing to maintain or inspect it properly.

Our review of the trial court's reversal of a final agency decision involves two inquiries: (1) whether the trial court exercised the appropriate standard of review; and (2) whether the trial court properly applied the standard of review. *Kea v. Dep't of Health and Human Servs.*, 153 N.C. App. 595, 570 S.E.2d 919 (2002), *appeal dismissed*, 356 N.C. 673, 577 S.E.2d 120 (2003). This Court's scope of review is the same as that employed by the trial court. *Wallace v. Bd. of Trs.*, 145 N.C. App. 264, 550 S.E.2d 552, *disc. review denied*, 354 N.C. 580, 559 S.E.2d 553 (2001).

The trial court may reverse or modify an agency's final decision or adopt the ALJ's decision

> if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b). Alleged errors of law, including questions of statutory interpretation by the agency, are reviewed *de novo* by the trial court. *Friends of Hatteras Island Nat'l Historic Maritime Forest Land Trust for Preservation v. Coastal Resources Comm'n*, 117 N.C. App. 556, 452 S.E.2d 337 (1995). Where an allegation is made that a final agency decision is not supported by competent evidence or is arbitrary and capricious, the trial court must review the decision under the whole record test. *Walker v. North Carolina Dep't of Human Resources*, 100 N.C. App. 498, 397 S.E.2d 350 (1990), *cert. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991).

In this case, the petition for judicial review of the EMC's final agency decision alleged that its findings and conclusions were unsup-

ported by substantial competent evidence. The EMC's decision contained the following pertinent findings of fact:

> 6. . . . Upon uncovering the section of sewer collection line in question, the Town [of Wallace] discovered that the bell (joint) portion of one section of pipe had broken off at the bottom. An old tree stump with roots was removed by the Town in uncovering the section of broken pipe. According to the Town, the pipeline break was the result of "decayed tree stump roots which grew into pipe joints and along with the high rainfall (5 in.) creek water caused a break in the pipe."
>
> . . .
>
> 14. The Town of Wallace had never inspected or performed maintenance to the *interior* of the main collection line where the break occurred[,] but it had recently performed inspections and maintenance of other sewer collection lines in the Town's collection system as mandated by DWQ in a Special Order of Consent, ("SOC").
>
> 15. The Town of Wallace did not possess a valid permit for the discharge of waste water to the creek that resulted from the broken pipe.

(emphasis added). The EMC then concluded:

> 8. The Town of Wallace permitted the discharge, spillage and leakage of approximately 1.0 million gallons of municipal sewage into Little Rockfish Creek on 16 June 1999 as a result of its failure to perform any inspection or maintenance of the pipes in the affected portion of the sewer collection line where the rupture or break occurred.

When reviewing the agency's decision to determine whether there was substantial evidence to support the findings and conclusions, the trial court must employ the whole record test and examine all evidence presented to the agency. N.C. Gen. Stat. § 150B-51(b)(5). The trial court's order recites that it "conducted both a *de novo* review as well as a whole record test" of the final decision. Thus, we conclude the trial court exercised the proper standard of review on the question of substantial competent evidence to support the EMC's findings and conclusions. *See Kea, supra*, 153 N.C. App. at 603, 570 S.E.2d at 924. We now must determine whether it properly applied the whole record test.

The whole record test requires the trial court to examine all evidence before the agency and to determine whether the decision has a rational basis in the evidence. *In re Rogers*, 297 N.C. 48, 253 S.E.2d 912 (1979). If the trial court concludes that there is substantial competent evidence in the record to support the findings, the agency decision must stand. *Little v. North Carolina State Bd. of Dental Examiners*, 64 N.C. App. 67, 306 S.E.2d 534 (1983). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' It is more than a scintilla or a permissible inference." *Lackey v. North Carolina Dep't of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982) (citations omitted). The trial court may not weigh the evidence presented to the agency or substitute its own judgment for that of the agency. *King v. North Carolina Envtl. Management Comm'n*, 112 N.C. App. 813, 436 S.E.2d 865 (1993).[1]

The trial court found that there was no competent evidence of record to support the EMC's conclusion that the break occurred because petitioner failed to maintain or inspect the sewer lines properly. It then concluded that "[t]he Respondent has failed to present substantial credible evidence that the Petitioner either caused or permitted the break in the sewer line to occur, by either failing to properly or reasonably maintain or inspect the sewer line in question."

We first note that the trial court made independent findings of fact in its order. However, findings contained in the final agency decision which are not objected to by the petitioner are binding on the trial court. *Walker, supra*. Since petitioner objected only to finding of fact 14, all of the EMC's other findings were binding, and the trial court did not have the discretion to make its own findings of fact.

Further, after reviewing the record before us, we conclude there was substantial competent evidence to support the agency's findings and conclusions that petitioner permitted the break to occur by failing to properly inspect or maintain the pipe. The initial report submitted by Parker identified the cause of the break in the pipe as decayed tree stump roots. Testimony from Colby indicated petitioner had not inspected the pipe's interior and that it had performed main-

1. Subsection (c) of N.C. Gen. Stat. § 150B-51 requires the reviewing court to engage in a *de novo* review of a final agency decision where the agency did not adopt the ALJ recommendation. This subsection was enacted in 2000 and is applicable to contested cases commenced on or after 1 January 2001. Because the contested case petition in the instant case was filed on 13 March 2000, the standard of review articulated in subsection (c) does not apply.

tenance right-of-way around the pipe to clear away trees and bushes three to four years prior to the break. The assessment by DWQ Director Kerr T. Stevens stated that "[t]he violations are not considered willful or intentional" but were due to "inadequate maintenance." Field samples taken by Colby established violations of water quality standards in Little Rockfish Creek following the spill. The foregoing provided the EMC with substantial competent evidence upon which it based its final agency decision.

Petitioner presented contrary evidence regarding the cause of the break and the necessity of inspecting the interior of the pipes primarily through Parker's testimony. This testimony conflicted with the initial information provided in Parker's report to respondent. Conflicts in testimony and witness credibility are issues to be determined by the agency, not the reviewing court. *Yates Constr. Co. v. Commissioner of Labor*, 126 N.C. App. 147, 484 S.E.2d 430 (1997). " 'The "whole record" test does not allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*[.]' " *Wilkie v. North Carolina Wildlife Resources Comm'n*, 118 N.C. App. 475, 483, 455 S.E.2d 871, 876 (1995) (citation omitted). Thus, the trial court improperly weighed the evidence and substituted its own evaluation for the EMC's.

We hold the trial court incorrectly applied the standard of review required under N.C. Gen. Stat. § 150B-51(b) and erred in concluding that the EMC's findings and conclusions were not supported by substantial competent evidence of record.

II.

[2] Respondent next argues the trial court erred in placing the burden of proof on DENR to show that petitioner caused the sewage discharge. Respondent particularly assigns as error (1) the trial court's finding that there was an "absence of any competent evidence that the Petitioner either caused or permitted the waste to go into the stream;" and (2) its conclusion that respondent "failed to present substantial credible evidence that the Petitioner either caused or permitted the break in the sewer line to occur, by either failing to properly or reasonably maintain or inspect the sewer line in question." As a result, respondent contends the trial court erroneously placed the burden of proof upon it, rather than petitioner.

In a contested case filed pursuant to N.C. Gen. Stat. Chapter 150B, the petitioner must "state facts tending to establish that the agency named as the respondent has . . . substantially prejudiced the petitioner's rights and that the agency: . . . (2) Acted erroneously; . . . (4) Acted arbitrarily or capriciously; or (5) Failed to act as required by law or rule." N.C. Gen. Stat. § 150B-23(a). The party having the burden of proof must establish the required facts by a preponderance of the evidence. N.C. Gen. Stat. § 150B-29(a). Chapter 150B, Article 3 is otherwise silent as to the burden of proof in demonstrating error by the agency. Similarly, N.C. Gen. Stat. § 143-215.1 does not specify which party bears the burden of proving an alleged violation of subsection (a)(6) for causing or permitting waste to be discharged into State waters without a permit.

The trial court's judgment does not relieve petitioner of its burden of pleading sufficient facts to demonstrate respondent's actions violated State law under N.C. Gen. Stat. § 150B-23(a). Thus, we disagree with respondent's argument that the trial court's finding of fact and conclusion of law at issue in this assignment of error erroneously placed the burden of proof on respondent. The conclusion that respondent failed to present substantial credible evidence that petitioner caused or permitted the discharge by improper maintenance or inspection has been addressed in Part I of this opinion.

### III.

[3] Finally, respondent contends the trial court erred in permanently restraining and enjoining respondent from imposing any civil penalty or investigative costs on petitioner.

Generally, the trial court may not impose an equitable remedy when there is an adequate and complete remedy at law. *Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 411 S.E.2d 916 (1992). A party to a contested case may appeal a final agency decision through the procedures set forth in N.C. Gen. Stat. Chapter 150B, Article 4. This section governs the scope of the trial court's review and the actions it may take. None of the statues in this section authorize a trial court to enjoin an agency from executing its statutory duties.

We conclude that N.C. Gen. Stat. Chapter 150B, Article 4 provides petitioner a complete and adequate remedy at law and, therefore, hold the trial court erred in permanently restraining and enjoining respondent from imposing a civil penalty upon or investigating petitioner for water quality violations.

Because we reverse the trial court's decision on the grounds that it improperly applied the standard of review in determining whether substantial competent evidence supported the EMC's findings and conclusions that petitioner permitted the break by failing to properly inspect or maintain the sewer line, we do not address respondent's remaining assignments of error. We remand this matter to the trial court for entry of judgment consistent with this decision.

Reversed and remanded.

Judges TIMMONS-GOODSON and HUDSON concur.