DEEP RIVER CITIZENS' COALITION, PETITIONER v. NORTH CAROLINA DEPART-MENT OF ENVIRONMENT AND NATURAL RESOURCES, RESPONDENT, CITY OF GREENSBORO AND PIEDMONT TRIAD REGIONAL WATER AUTHORITY, RESPONDENT-INTERVENORS, DEEP RIVER COALITION, INC., ET AL. PETITIONERS v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, RESPONDENT, CITY OF GREENSBORO AND PIEDMONT TRIAD REGIONAL WATER AUTHORITY, RESPONDENT-INTERVENORS

No. COA02-1657

(Filed 6 July 2004)

**1. Administrative Law— whole record test—dam proposal— water quality standards not violated**

The trial court properly chose the whole record test where the question was whether there was substantial evidence that DENR had provided reasonable assurance that the proposed Randleman Dam and Reservoir would not violate water quality standards. This matter was filed before N.C.G.S. § 150B-51(c) became applicable.

**2. Environmental Law— water quality—substantial evi-dence—discrepancies for agency**

The trial court properly concluded that there was substantial competent evidence to support the Environmental Management Commission's determination that DENR had provided reasonable assurance that water quality standards would not be violated by the proposed dam and reservoir. Petitioner's argument merely raises discrepancies in the evidence; under the whole record test, the reviewing court must not substitute its evaluation of the evidence for that of the agency. Moreover, the court had substantial evidence that the State can impose additional restrictions if water quality standards are actually threatened.

DEEP RIVER CITIZENS' COALITION v. N.C. DEP'T OF ENV'T & NATURAL RES.

[165 N.C. App. 206 (2004)]

Appeal by petitioners from judgment and order entered 10 September 2002 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 20 August 2003.

*Cunningham, Dedmond, Petersen & Smith, LLP, by Marsh Smith, and Terris, Pravlik & Millian, LLP, by Bruce J. Terris and Demian A. Schane, for petitioners-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Kathryn Jones Cooper and Special Deputy Attorney General Francis W. Crawley, for respondent-appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by George W. House, and Linda A. Miles, for respondent-intervenor City of Greensboro, and Hunton & Williams, by Charles D. Case and Julie Beddingfield, for respondent-intervenor Piedmont Triad Regional Water Authority.*

TIMMONS-GOODSON, Judge.

American Canoe Association, Inc. and Deep River Citizens' Coalition, Inc. ("petitioners") appeal the judgment and order of the trial court granting summary judgment in favor of the North Carolina Department of Environment and Natural Resources ("DENR"), City of Greensboro ("Greensboro") and Piedmont Triad Regional Water Authority ("Water Authority") (collectively hereinafter "respondents"). For the reasons stated herein, we affirm the decision of the trial court.

Since May of 1999, petitioners have contested the Randleman Dam and Reservoir construction project through various legal petitions and court hearings. In September 2000, the instant case was brought before the Environmental Management Commission (the "EMC"). Petitioners moved the EMC for summary judgment, and respondents filed a cross-motion for summary judgment. The EMC granted summary judgment for defendants. Petitioners appealed to the Superior Court. In September 2002, the Superior Court also granted summary judgment for respondents, finding that DENR (1) properly issued a 401 Water Quality Certification ("401 Certification") for the project; (2) substantially proved that the Randleman Dam project would not violate the State's water quality standards; and (3) did not violate the North Carolina Environmental Policy Act ("NCEPA") by issuing the 401 Certification before a final environmental impact statement ("FEIS") was complete. It is from this sum-

DEEP RIVER CITIZENS' COALITION v. N.C. DEP'T OF ENV'T & NATURAL RES.

[165 N.C. App. 206 (2004)]

mary judgment that petitioners now appeal. Further facts are set out in the opinion as necessary.

---

Petitioners argue that the trial court erred by (1) applying the whole record test rather than the *de novo* standard in reviewing the EMC's decision; (2) denying petitioners' motion for summary judgment because respondents failed to reasonably assure the EMC that the project would not violate the State's water standards; and (3) upholding the 401 Certification although it was issued before a FEIS was complete. For the reasons stated herein, we affirm the trial court's order.

[1] By their first assignment of error, petitioners argue the trial court erred by applying the whole record test to one of the sub-issues presented on appeal. We examine the trial court's affirmance of the EMC's decision to determine "(1) whether the trial court exercised the appropriate standard of review; and (2) whether the trial court properly applied the standard of review." *Clark Stone Co. v. N.C. Dep't of Env't & Natural Res.*, 164 N.C. App. 24, 31, 594 S.E.2d 832, 837 (2004); *Town of Wallace v. N.C. Dep't of Env't & Natural Res.*, 160 N.C. App. 49, 52, 584 S.E.2d 809, 812-13 (2003). This Court's scope of review is the same as that utilized by the trial court. *Clark Stone Co.*, 164 N.C. App. at 31, 594 S.E.2d at 837. The trial court may reverse or modify an agency's final decision if

> the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2001). The trial court reviews *de novo* any alleged errors of law. *County of Wake v. N.C. Dep't of Env't*, 155

DEEP RIVER CITIZENS' COALITION v. N.C. DEP'T OF ENV'T & NATURAL RES.

[165 N.C. App. 206 (2004)]

N.C. App. 225, 233, 573 S.E.2d 572, 579 (2002), *disc. review denied*, 357 N.C. 62, 579 S.E.2d 387 (2003). However, "if the petitioner contends the agency decision was not supported by the evidence, N.C.G.S. § 150B-51(5), or was arbitrary, capricious, or an abuse of discretion, N.C.G.S. § 150B-51(6), the whole record test is utilized." *Id.* Under the whole record test, the trial court examines all of the evidence before the agency in order to determine whether the decision has a rational basis in the evidence. *Town of Wallace*, 160 N.C. App. at 54, 584 S.E.2d at 813. Where there is substantial competent evidence in the record to support the findings, the agency decision must stand, as the trial court may not weigh the evidence presented to the agency or substitute its own judgment for that of the agency. *See Clark Stone Co.*, 164 N.C. App. at 31-32, 594 S.E.2d at 837.[1]

Petitioners contend the trial court should have applied *de novo* review to the issue of whether there was substantial evidence that DENR provided reasonable assurance that the proposed Randleman Dam and Reservoir would not violate applicable water quality standards. We disagree. Section 150B-51 of the General Statutes clearly mandates that the trial court must review a petitioner's allegation of insufficient evidence to support an agency decision "in view of the entire record as submitted." N.C. Gen. Stat. § 150B-51(b)(5). We conclude that the trial court properly applied the whole record test to this issue.

[2] Petitioners further argue the trial court erred by finding and concluding there was substantial competent evidence to support the EMC's determination that the Randleman Dam and Reservoir would not violate certain water quality standards. Specifically, petitioners argue there was insufficient evidence that the proposed project would not violate the State's water quality standards for chlorophyll *a*. The governing standard applicable to all fresh surface waters in North Carolina provides that the amount of chlorophyll *a* should not exceed

40 $\mu$g/l for lakes, reservoirs, and other waters subject to growths of macroscopic or microscopic vegetation not designated as trout waters, and not greater than 15 $\mu$g/l for lakes, reservoirs, and

---

1. Subsection (c) of N.C. Gen. Stat. § 150B-51, which requires the reviewing court to engage in a *de novo* review of a final agency decision where the agency did not adopt the ALJ recommendation, was enacted in 2000 and is applicable to contested cases commenced on or after 1 January 2001. Because the contested case petition in the instant case was filed 3 May 1999, the standard of review articulated in subsection (c) does not apply.

DEEP RIVER CITIZENS' COALITION v. N.C. DEP'T OF ENV'T & NATURAL RES.

[165 N.C. App. 206 (2004)]

other waters subject to growths of macroscopic or microscopic vegetation designated as trout waters (not applicable to lakes and reservoirs less than 10 acres in surface area); the Commission or its designee may prohibit or limit any discharge of waste into surface waters if, in the opinion of the Director, the surface waters experience or the discharge would result in growths of microscopic or macroscopic vegetation such that the standards established pursuant to this Rule would be violated or the intended best usage of the waters would be impaired . . . .

15A N.C. Admin. Code tit. 15A, r. 2B.0211(3)(a). Petitioners contend the trial court erred in finding and concluding there were adequate assurances that chlorophyll *a* levels would not be violated by the proposed Randleman Reservoir.

In the recommended decision ultimately adopted by the EMC, the administrative law judge found, *inter alia*, that

21. Based upon earlier eutrophication modeling done for the [Piedmont Triad Regional Water] Authority by Tetra Tech, [the Division of Water Quality] requested additional eutrophication modeling by Research Triangle Institute. Research Triangle Institute's final report entitled Eutrophication Modeling for the Randleman Lake Project delivered to the DENR Division of Water Quality on September 30, 1998 generally supported the findings in Tetra Tech's analysis. The Research Triangle Institute report includes nutrient response modeling output that predicted future concentrations of chlorophyll *a* in the upper two segments (1 and 2) of the proposed Randleman Lake in excess of 40 µg/l during the summer growing season under certain sets of assumptions.

22. To address the modeling predictions and to add further protection against eutrophication in Randleman Lake, the EMC, at the request of the Director of [the Division of Water Quality], promulgated nutrient controls in excess of the controls usually applied to WS-IV waters. . . . The Randleman Rules include aggressive steps to affect both point source and nonpoint source nutrient loads and would consequently limit chlorophyll *a* concentrations. After a September 1, 1998 Public Hearing, the Hearing Officers' Report to the EMC . . . concluded that the combination of the Randleman Rules with other control measures available to the [Division of Water Quality] will prevent average chlorophyll *a* concentrations in

DEEP RIVER CITIZENS' COALITION v. N.C. DEP'T OF ENV'T & NATURAL RES.

[165 N.C. App. 206 (2004)]

excess [of] 40 $\mu$g/l in all segments of Randleman Lake under the various modeling scenarios considered, including the most conservative scenario of the summer growing season.

. . . .

25. Historically, the chlorophyll *a* standard has not been used to prevent the creation of water supply lakes . . . but has been used as a trigger or indicator of the need for management strategies to protect nutrient-impaired waters.

26. At the time the Director made the decision to issue the 401 Water Quality Certification to the Authority, he was aware of nutrient response models that predicted instantaneous chlorophyll *a* [excesses] of 40 $\mu$g/l under certain scenarios in Water Quality Segments 1 and 2 of the proposed reservoir at certain times. . . .

27. On March 11, 1999, the Director of the Division of Water Quality signed Water Quality Certification No. 970722 for the Proposed Randleman Reservoir. At the time the Director made this 401 Water Quality Certification determination, he specifically considered the existing Randleman Lake Water Supply Watershed Nutrient Management Strategy and the opportunity that the State would have to impose additional restrictions on nutrient sources in the event of actual or threatened water quality standard violations after the reservoir is constructed.

28. The Water Quality Certification's conditions include the following specific reference to maintain at a minimum the high level of protection currently provided by the Randleman Lake Water Supply Watershed Nutrient Management Strategy:

> If any changes are made to 15A NCAC 2B.0248, .0249, .0250, .0251 adopted by the Environmental Management [Commission] on November 12, 1998, that are not equal or more protective than these rules, then this Certification is voided and new 401 Certification with public notice is required.

In its review of the final agency decision, the trial court found that the record contained

> more than adequate and substantial evidence to uphold the EMC's Decision's conclusion that there were adequate assurances that

DEEP RIVER CITIZENS' COALITION v. N.C. DEP'T OF ENV'T & NATURAL RES.

[165 N.C. App. 206 (2004)]

the chlorophyll *a* standard will be met. For example, as discussed there, the most recent computer models predicted that chlorophyll *a* average for all water quality segments of the Randleman Reservoir will be below the number specified in the rule. As discussed there, the eutrophication modeling, Second DEIS, Second FEIS, Third DEIS, the Review Document, the 1998 hearing Officers' Report, the Randleman Lake Water Supply Watershed Nutrient Management Strategy rules, and the condition designed to maintain the level of protection from nutrients established by the management strategy rules all constitute substantial evidence which support the conclusion by the EMC that there were reasonable assurances that the chlorophyll *a* water quality standard would not be violated when the 401 Certification was issued.

In support of their argument, petitioners direct this Court to computer models used by the EMC in predicting the effects the Randleman project will have on resulting chlorophyll *a* levels. Two of the three models predict levels of chlorophyll *a* in excess of the water quality standard of 40 $\mu$g/l, while the third model predicts an average value of chlorophyll *a* below 40 $\mu$g/l. Petitioners also contend the computer models were flawed and unreliable. Petitioners argue there was therefore insufficient evidence that future violations of chlorophyll *a* levels will not occur, contrary to the trial court's findings. Respondents argue that the first two models were preliminary, and that the third model most accurately predicts future chlorophyll *a* levels. Inasmuch as petitioners' argument raises mere discrepancies in the evidence, the resolution of which was for the agency, the trial court properly concluded there was substantial competent evidence to support the EMC's determination that DENR provided reasonable assurance that the State's water quality standards would not be violated by the proposed project. *See King v. N.C. Envtl. Management Comm'n*, 112 N.C. App. 813, 817-18, 346 S.E.2d 865, 869 (1993) (stating that, "[u]nder the whole record test, the probative value of testimony is for the agency to determine, and the reviewing court must not substitute its evaluation of the evidence for that of the agency.").

Petitioners argue, however, that the 40 $\mu$g/l standard represents a daily maximum rather than an average value, and that the third model, which predicts average levels below 40 $\mu$g/l, will nevertheless result in actual violations of the standard. Petitioners contend, therefore, that the trial court lacked substantial evidence that violations of the water quality standards would not occur. Petitioners concede,

DEEP RIVER CITIZENS' COALITION v. N.C. DEP'T OF ENV'T & NATURAL RES.

[165 N.C. App. 206 (2004)]

however, that "DENR is [not] prohibited from issuing a 401 Certification whenever a computer model predicts levels above 40 $\mu g/l$." Further, the evidence tended to show, and the EMC found that "[h]istorically, the chlorophyll $a$ standard has not been used to prevent the creation of water supply lakes . . . but has been used as a trigger or indicator of the need for management strategies to protect nutrient-impaired waters." As further found by the EMC, at the time the Director of the Division of Water Quality issued the 401 Certification, he was aware of the potential for water quality standard violations and "specifically considered the existing Randleman Lake Water Supply Watershed Nutrient Management Strategy and the opportunity that the State would have to impose additional restrictions on nutrient sources in the event of actual or threatened water quality standard violations after the reservoir is constructed." We agree with respondents that "no one will know precisely whether or to what extent exceedances [sic] of the Standard will occur until construction of the dam and impoundment of the lake have been completed" but that mere "[k]nowledge of the potential for exceedances [sic] of the chlorophyll $a$ standard was not sufficient to preclude [DENR] from issuing the 401 Certification." The trial court therefore had before it substantial and competent evidence that, in the event water quality standards were actually threatened, the State could impose additional restrictions to avoid chlorophyll $a$ violations. We conclude the trial court did not err in concluding that DENR provided reasonable assurance that the State's water quality standards would not be violated by the proposed project.

By their final assignment of error, petitioners argue DENR was required to wait until the FEIS was complete before it issued the 401 Certification. Assuming *arguendo* that petitioners are correct, this issue has nevertheless been rendered moot by the subsequent issuance of the FEIS. *See Richmond Co. v. N.C. Low-Level Radioactive Waste Mgmt. Auth.*, 108 N.C. App. 700, 708-09, 425 S.E.2d 468, 473, *affirmed*, 335 N.C. 77, 436 S.E.2d 113 (1993); *accord, Warren County v. North Carolina*, 528 F. Supp. 276, 286 (E.D.N.C. 1981) (noting that the failure to prepare and publish an EIS as required by North Carolina law was rendered moot as a cause of action by the subsequent filing of such a statement). We therefore do not address this assignment of error.

For the reasons stated herein, the judgment and order of the trial court is

Affirmed.

Judges HUNTER and ELMORE concur.

