RONALD GOLD OVERCASH, Petitioner v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, DIVISION OF WASTE MANAGEMENT, Respondent

No. COA05-1342

(Filed 17 October 2006)

## 1. Administrative Law— judicial review—de novo

The reviewing court engages in de novo review when an agency is alleged to have violated N.C.G.S. § 150B-51(b)(1),(2),(3), or (4). In de novo review, the court considers the matter anew and freely substitutes its own judgment for the agency's.

OVERCASH v. N.C. DEP'T OF ENV'T & NATURAL RES.

[179 N.C. App. 697 (2006)]

**2. Administrative Law— judicial review—whole record test**

A reviewing court applies the whole record test when an agency is alleged to have violated N.C.G.S. § 150B-51(b)(5) or (6). Under this standard, the court examines the record for substantial evidence to justify the agency's decision and may not substitute its judgment for the agency's, even if a different result could have been reached reasonably.

**3. Administrative Law— reversal of agency decision—burden of proof**

The trial court did not err by concluding that the Environmental Management Commission (EMC) properly allocated the burden of proof to petitioner where petitioner was seeking to show a basis for reversing the agency decision imposing fines for underground storage tank violations, even if that burden requires that petitioner prove a negative.

**4. Appeal and Error— assignments of error—sufficiency of evidence to support findings—broadside**

A single assignment of error generally challenging the sufficiency of the evidence to support numerous findings of fact is broadside and not effective. Arguments in this case regarding the sufficiency of the evidence were not considered because none of the assignments of error addressed whether a specific finding was supported by competent evidence.

**5. Evidence— underground storage tanks—missing records of equipment and tests—admissibility to show that inspections not performed**

Petitioner's failure to provide DENR with records of the installation of required equipment and the performance of required tests on underground storage tanks was admissible as evidence that he did not perform the installation or the tests. Although petitioner argues that he was only required to keep the records for one year, he does not distinguish between violations for not maintaining the records and violations for not performing the inspections that would produce the records.

**6. Administrative Law— findings—sufficiency**

There were sufficient ultimate findings of fact to determine the issues presented by a contested case, although some findings were ultimate, some were evidentiary, and some a mix.

**7. Environmental Law— underground storage tanks—permits**

DENR was not prevented from imposing fines on petitioner for lack of underground storage tank permits where petitioner contended that he was protected by N.C.G.S. § 150B-3(a), which extends the expiration date for a permit. That statute protects only applicants who make a timely and sufficient application for issuance or renewal of a license, which petitioner did not do.

Appeal by petitioner from judgment entered 11 July 2005 by Judge Ronald K. Payne in Cabarrus County Superior Court. Heard in the Court of Appeals 16 May 2006.

*Ferguson, Scarbrough, Hayes & Price, P.A., by James E. Scarbrough, for petitioner-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Francis W. Crawley and Assistant Attorney General Jay L. Osborne, for respondent-appellee.*

GEER, Judge.

Petitioner Ronald Gold Overcash appeals from the Cabarrus County Superior Court's judgment upholding a final agency decision of the Environmental Management Commission (the "EMC"), imposing penalties in the total amount of $125,880.26 as a result of Overcash's violations of underground storage tank regulations. Overcash argues primarily that he was incorrectly required to bear the burden of proving that he did not violate the regulations and that the findings of fact adopted by the EMC are inadequate. Because the controlling case law places the burden of proof on the petitioner in an administrative contested case proceeding to prove that he is entitled to relief from an agency decision, and this is the burden that the decisions below imposed on Overcash, we hold the trial court properly rejected Overcash's argument regarding the burden of proof. Further, based upon our review of the agency decision, which adopted in full the recommended decision of the administrative law judge (the "ALJ"), we hold that the EMC made sufficient findings of fact to support its conclusions of law and the imposition of the penalties. Because Overcash's remaining assignments of error are either without merit or were not properly preserved for appellate review, we affirm the superior court's judgment.

## Facts and Procedural History

Overcash owns and operates underground storage tanks ("USTs") at several locations in North Carolina, including Overcash Gravel and Grating at 1150 Shelton Road in Concord ("Shelton Road site"), Coddle Creek Grocery at 11181 Mooresville Road in Davidson ("Coddle Creek site"), and Bethpage Grocery at 4940 Mooresville Road in Kannapolis ("Bethpage Grocery site"). Over the course of five years, the Department of Environmental and Natural Resources ("DENR") investigated these properties pursuant to Subchapter 2N of Title 15A of the North Carolina Administrative Code, which codifies the criteria and standards applicable to USTs in our State.

### A. Shelton Road Site

In December 1997, DENR conducted an educational compliance inspection of Overcash's Shelton Road site and found a number of deficiencies. Overcash was given five months to correct the violations. On 29 May 1998, a follow-up inspection of the site revealed many of the same violations, as well as several new ones. At that point, DENR gave Overcash a Notice of Violation ("NOV"), informing him that he had 30 days to correct the violations or permanently close the site. Overcash did not respond.

DENR again inspected the site on 28 July 1999 and found that Overcash had failed to remedy the violations discovered during the previous investigations and also that there appeared to be yet more new violations. A revised NOV was sent by certified mail to Overcash, but he refused receipt. In April 2000, based on this series of violations and Overcash's lack of response, DENR assessed civil penalties in the amount of $15,980.64 against Overcash for his failure to provide (1) corrosion protection, (2) spill prevention equipment, (3) overfill equipment, (4) records for inspection, and (5) an automatic line leak detector.

Following the imposition of this penalty, DENR conducted yet another inspection at the Shelton Road site on 8 May 2001. Again, the inspection revealed that Overcash had not met the compliance conditions set forth by the earlier NOV. During the inspection, DENR inspectors also observed two additional USTs at the site that had not been registered. DENR assessed a second civil penalty against Overcash, this time in the amount of $26,942.88, for his failure to install the protections and equipment required by the previous investigations, his failure to report and investigate a suspected petro-

leum release at the site, and his failure to maintain a valid operating permit for the additional USTs.

### B. Coddle Creek Site

After notifying Overcash of a planned inspection, DENR inspected Overcash's Coddle Creek site on 26 October 2001 and issued an NOV listing a number of violations. When, on 22 March 2002, it had still received no response to the October NOV, DENR assessed a series of penalties against Overcash for his failure to (1) provide corrosion protection for the USTs, (2) conduct a valid process of leak detection for the USTs and their piping systems, and (3) conduct an annual line leak test. DENR also fined Overcash for locating his UST within 100 feet of a well serving a public water supply. The civil penalties initially totaled $45,978.37, but were later recalculated and reduced to $38,978.37.

### C. Bethpage Grocery Site

On 29 August 2001, DENR sent a written notice to Overcash of a planned investigation of the Bethpage Grocery site. DENR inspected the site on 10 September 2001 and issued an NOV listing a number of violations. Overcash did not respond to the September NOV. After a follow-up inspection in January 2002, DENR imposed a penalty in April 2002 of $43,978.37 for Overcash's failure to (1) conduct a valid method of leak detection for the USTs and their piping systems, (2) conduct an annual line leak test, and (3) hold a valid operating permit.

### D. Procedural History

In May 2000, April 2002, and May 2002, Overcash commenced separate contested case proceedings in the Office of Administrative Hearings. The contested cases were consolidated for hearing, and the ALJ issued a recommended decision on 4 April 2003 that was amended on 7 April 2003 to correct clerical errors. The recommended decision upheld all of the civil penalties that DENR had assessed for violations at Overcash's three sites.

On 16 October 2003, the EMC issued its Final Agency Decision adopting the ALJ's decision in full and affirming the imposition of the penalties, which, all told, amounted to $125,880.26. Overcash appealed to superior court, and, on 11 July 2005, the Honorable Ronald K. Payne filed a judgment affirming the EMC's final agency decision. From this judgment, Overcash timely appealed.

Standard of Review

Review of the EMC's final agency decision is governed by N.C. Gen. Stat. § 150B-51(b) (2005),[1] which provides:

[I]n reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

See also N.C. Dep't of Env't & Natural Res. v. Carroll, 358 N.C. 649, 658-59, 599 S.E.2d 888, 894 (2004) (stating that an agency's final decision may be reversed or modified "only if the reviewing court determines that the petitioner's substantial rights may have been prejudiced because the agency's findings, inferences, conclusions, or decisions" fall into one of the six categories listed in § 150B-51(b)). This Court's scope of review is the same as that employed by the trial court. Wallace v. Bd. of Trs., Local Gov't Employees Ret. Sys., 145 N.C. App. 264, 274, 550 S.E.2d 552, 558, disc. review denied, 354 N.C. 580, 559 S.E.2d 553 (2001).[2]

1. Neither N.C. Gen. Stat. § 150B-51(a1) (addressing the court's review when the agency heard new evidence after receiving the ALJ decision) nor N.C. Gen. Stat. § 150B-51(c) (governing judicial review when the agency does not adopt the ALJ decision) is applicable.

2. We note that Overcash has not complied with N.C.R. App. P. 28(b)(6), which requires not only that "[t]he argument . . . contain a concise statement of the applicable standard(s) of review," but also that the statement of the standards of review "contain citations of the authorities upon which the appellant relies." Overcash has neglected to include any citations of authority to support his contentions regarding the applicable standard of review.

[1] When the assigned error contends that the agency violated §§ 150B-51(b)(1), (2), (3), or (4), the court engages in de novo review. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 895. "Under the *de novo* standard of review, the trial court consider[s] the matter anew[] and freely substitutes its own judgment for the agency's." *Id.* at 660, 599 S.E.2d at 895 (alteration original) (internal quotation marks omitted).

[2] With respect to §§ 150B-51(b)(5) or (6), on the other hand, the reviewing court applies the " 'whole record test.' " *Carroll*, 358 N.C. at 659, 599 S.E.2d at 895 (quoting *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 663, 509 S.E.2d 165, 170 (1998)). Under the whole record test, the trial court "may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*. Rather, a court must examine all the record evidence—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision. Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Id.* at 660, 599 S.E.2d at 895 (internal quotation marks and citations omitted). With these principles in mind, we turn to an examination of Overcash's contentions on appeal.

## Burden of Proof

[3] Overcash first argues that he was incorrectly made to bear the burden of proof during the hearing before the ALJ. The proper allocation of the burden of proof is purely a question of law. *Lindsay v. Brawley*, 226 N.C. 468, 471, 38 S.E.2d 528, 530 (1946). We review the trial court's ruling rejecting this argument de novo. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 895.

N.C. Gen. Stat. § 150B-23(a) (2005) provides:

A contested case shall be commenced by filing a petition with the Office of Administrative Hearings . . . . *[I]f filed by a party other than an agency, [the petition] shall state facts tending to establish that the agency named as the respondent . . . has ordered the petitioner to pay a fine or civil penalty . . . and that the agency:*

(1) Exceeded its authority or jurisdiction;

(2) Acted erroneously;

(3) Failed to use proper procedure;

(4) Acted arbitrarily or capriciously; or

(5) Failed to act as required by law or rule.

(Emphasis added.) *See also* N.C. Gen. Stat. § 150B-29(a) (2005) ("The party with the burden of proof in a contested case must establish the facts required by G.S. 150B-23(a) by a preponderance of the evidence.").

While neither of these statutes specifically allocates the burden of proof, this Court held in *Britthaven, Inc. v. N.C. Dep't of Human Res.*, 118 N.C. App. 379, 382, 455 S.E.2d 455, 459 (emphasis omitted), *disc. review denied*, 341 N.C. 418, 461 S.E.2d 754 (1995), that "the ALJ is to determine whether the petitioner has met its burden in showing that the agency" acted or failed to act as provided in § 150B-23(a)(1)-(5). Likewise, in *Holly Ridge Assocs., LLC v. N.C. Dep't of Env't & Natural Res.*, 176 N.C. App. 594, 608, 627 S.E.2d 326, 337 (2006), this Court observed that "caselaw holds that unless a statute provides otherwise, petitioner has the burden of proof in OAH contested cases." Applying this principle, the Court concluded that the petitioner—and not DENR—bore the burden of proving the violations specified in N.C. Gen. Stat. § 150B-23(a). *Holly Ridge*, 176 N.C. App. at 608-09, 627 S.E.2d at 337. In short, this Court has already held that the burden of proof rests on the petitioner challenging an agency decision.

Further, while discussing the proper allocation of the burden of proof in a contested case involving a state employee, our Supreme Court explained:

> Two general rules guide the allocation of the burden of proof outside the criminal context: (1) the burden rests on the party who asserts the affirmative, in substance rather than form; and (2) the burden rests on the party with peculiar knowledge of the facts and circumstances. . . . The North Carolina courts have generally allocated the burden of proof in any dispute on the party attempting to show the existence of a claim or cause of action, and if proof of his claim includes proof of negative allegations, it is incumbent on him to do so.

*Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 328, 507 S.E.2d 272, 281 (1998). In appeals under § 150B-23(a), the statute requires a petitioner, other than an agency, to allege facts establishing that the agency acted improperly in order to state a proper basis for obtaining relief from the agency decision. Under *Peace*, because the petitioner

is seeking to show a basis for reversing the agency decision, the burden of proof is properly allocated to the petitioner—even if that burden requires proving a negative.

Overcash nonetheless contends that *Town of Wallace v. N.C. Dep't of Env't & Natural Res.*, 160 N.C. App. 49, 584 S.E.2d 809 (2003), places the burden of proof on the agency in a contested case petition. In *Town of Wallace*, however, this Court never specifically resolved the issue of the burden of proof. After pointing to the pleading burden imposed by N.C. Gen. Stat. § 150B-23(a) and the reference in N.C. Gen. Stat. § 150B-29(a) to the burden of proving the required facts by a preponderance of the evidence, the Court observed that "Chapter 150B, Article 3 is otherwise silent as to the burden of proof in demonstrating error by the agency." *Town of Wallace*, 160 N.C. App. at 56, 584 S.E.2d at 815. The Court did not further address the issue other than noting that the trial court did not relieve the Town of Wallace, the petitioner, of its burden of pleading sufficient facts under N.C. Gen. Stat. § 150B-23(a) and that the Court had reversed the trial court's conclusion that DENR had failed to present substantial evidence that the petitioner had caused an improper discharge, rendering the burden of proof issue immaterial. *Town of Wallace*, 160 N.C. App. at 56, 584 S.E.2d at 815.

*Town of Wallace* never addresses *Britthaven* and never conducts the analysis mandated by *Peace*. We do not believe that *Town of Wallace* expresses any view as to which party bears the burden of proof in a contested case that alleges an agency erred in one of the ways set out in N.C. Gen. Stat. § 150B-23(a). We are bound by *Britthaven* and *Holly Ridge*, as well as by the analysis in *Peace*, and accordingly hold that the trial court did not err in concluding that the EMC properly allocated the burden of proof to Overcash.

### Sufficiency of the Findings of Fact and Conclusions of Law

[4] A significant number of Overcash's remaining arguments on appeal relate to the specific violations found by DENR, such as the failure to install required equipment on the various USTs and to conduct required testing. With respect to each violation, Overcash alleges that the pertinent conclusions of law made by the ALJ, and ultimately adopted by the EMC, are "not based on adequate findings supported by substantial evidence." This repeated assertion appears to be two arguments rolled into one: (1) that there was insufficient evidence to support the findings of fact and (2) that adequate findings of fact do not support the conclusions of law.

We are precluded from considering Overcash's arguments regarding the sufficiency of the evidence to support the findings of fact because none of Overcash's 21 assignments of error addresses whether any specific finding of fact is supported by competent evidence. "Where no error is assigned to the findings of fact, such findings are presumed to be supported by competent evidence and are binding on appeal." *McConnell v. McConnell*, 151 N.C. App. 622, 626, 566 S.E.2d 801, 804 (2002). While Overcash does contend generally in one assignment of error "that the findings are inadequate and not supported by the evidence," it is well-established that "[a] single assignment generally challenging the sufficiency of the evidence to support numerous findings of fact . . . is broadside and ineffective." *Wade v. Wade*, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985). Because of Overcash's failure to assign error with respect to the sufficiency of the evidence to support any specified factual findings, those findings are binding on appeal, and we do not address those portions of his brief arguing that the EMC decision is unsupported by the evidence.

[5] Overcash does specifically assign error to the agency's reliance on his lack of records as evidence that he had not installed required equipment or conducted required tests. Overcash argues that he is only required by the Administrative Code to keep records for one year. *See* 15A N.C. Admin. Code 2N.0506 (2006) (adopting in full the provisions of 40 C.F.R. § 280.45(b) (2006)). He contends, based on this regulation, that DENR could not rely upon an absence of documentation of equipment and tests for periods of time not falling within the prior one-year period.

In making this argument, Overcash fails to distinguish between two different violations for which he was penalized: (1) a failure to maintain required records and (2) a failure to perform the inspections that would produce records. Overcash received one fine for his failure to keep records for the prescribed period of time: a penalty issued on 3 April 2000 based on a lack of records at the Shelton Road site during the period from 28 July 1999 to 3 February 2000.[3] Thus, to the extent that Overcash was fined specifically for a lack of recordkeeping, the fine was due to the absence of records dating less than one year before the violation date.

Most of Overcash's fines were not, however, imposed because of his failure to keep required records, but rather arose out of

_____

3. Overcash was, in fact, cited several other times for improper recordkeeping at his various sites, but he was actually fined only once.

Overcash's failure to provide required equipment for his USTs and failure to perform required tests on his USTs. The lack of any written documentation that Overcash had installed the equipment or performed the tests was one piece of evidence relied upon by DENR in finding Overcash's lack of compliance with the regulations. As DENR points out, installation of the equipment and performance of the testing would likely produce some document evidencing compliance, such as a receipt. DENR argues further:

> The record retention requirement was unchanged over the period under review and the reasonable inference arising from the current nonexistence of required records, that the tests were not conducted in the past, was properly inferred from the nonexistence of similar testing records in prior years.

> . . . .

> Overcash's facilities were inspected eight times between December 1997 and the fall of 2001, and the nonexistence of required records observed at each facility remained unchanged over that period. The fact that not a single document was produced to show that the required equipment was installed or routinely operated or monitored supports the permissible inference that the required activity, which would have generated the written record, had not occurred.

As Judge Payne explained below: "Because Ronald Overcash would have created or received a written record at the time each of the regulated activities was performed, his failure to provide records when the facilities were inspected to show the required pollution prevention actions had in fact been performed at each of his facilities supported the logical, reasonable inference . . . that he had not performed the activities as required." We find this reasoning persuasive and hold that Judge Payne did not err in concluding that Overcash's failure to provide to DENR records of installation of the required equipment and performance of the required tests—even after having prior notice of the inspections—"was evidence admissible to prove the fact" that he did not perform the installation or the tests.

[6] Overcash next contends that the findings of fact are insufficient to support the conclusions of law because they amount to evidentiary findings of fact and not ultimate findings of fact. " 'There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or

the defendant's defense; and evidentiary facts are those subsidiary facts required to prove ultimate facts. . . . An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts . . . .' " *Smith v. Smith*, 336 N.C. 575, 579, 444 S.E.2d 420, 422-23 (1994) (*quoting Peoples v. Peoples*, 10 N.C. App. 402, 409, 179 S.E.2d 138, 142 (1971)). Although the fact finder is not precluded from including evidentiary findings of fact in a decision, Rule 52(a) of the Rules of Civil Procedure "does require *specific findings* of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached." *Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982).

An examination of the ALJ decision, adopted by the EMC, reveals that some findings are ultimate, some are evidentiary, and some are a mix of both. While there is some recitation of the evidence, such as quotations from depositions and testimony, there are also sufficient ultimate findings of fact to determine the issues presented by the contested case.

We are left to examine whether those findings of fact support the conclusions of law. "[W]hether the conclusions of law are supported by the findings [is] a question of law fully reviewable on appeal." *State v. Campbell*, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005), *cert. denied*, 547 U.S. 1073, 164 L. Ed. 2d 523, 126 S. Ct. 1773 (2006). Apart from Overcash's contentions that we have discussed above, he makes no argument as to how the findings of fact fail to support his conclusions of law, nor does he attempt to demonstrate that the conclusions of law were in any other way impermissible under N.C. Gen. Stat. § 150B-51(b).[4] We, therefore, hold that the EMC's conclusions of law are sufficiently supported by the findings of fact.

### Untimely Permit Applications

**[7]** Lastly, Overcash argues that DENR improperly penalized him for operating the USTs without a permit when DENR had placed his pending applications on "administrative hold." Defendant contends

---

4. Overcash does argue that the release of fuel while fueling a truck does not constitute a prohibited release that can support a penalty—an apparent argument that the factual finding of such a release cannot support the conclusion of law that a violation occurred. Overcash, however, cites no authority for this contention and, therefore, we do not consider it. *See* N.C.R. App. P. 28(b)(6) ("Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

he was protected by N.C. Gen. Stat. § 150B-3(a) (2005), which extends the expiration date for a permit until DENR makes a final decision on whether the new application will be accepted.

N.C. Gen. Stat. § 150B-3(a) provides, in pertinent part:

> When an applicant or a licensee makes a timely and sufficient application for issuance or renewal of a license or occupational license, including the payment of any required license fee, the existing license or occupational license does not expire until a decision on the application is finally made by the agency, and if the application is denied or the terms of the new license or occupational license are limited, until the last day for applying for judicial review of the agency order.

Thus, by its plain language, the statute only protects applicants who make "timely and sufficient application for issuance or renewal of a license."

In this case, Overcash's brief does not contend that the applications were "timely." Indeed, Overcash stipulated in the Order on Final Pre-Hearing Conference, before the hearing on the contested case, that the last operating permits for the Shelton Road and Bethpage Grocery sites expired in 1999. Overcash did not file renewal applications until 2002. Further, as to two USTs at Shelton Road, Overcash had not attempted, prior to 2002, to obtain any permit, even though the USTs were in use. Since Overcash had not made "timely and sufficient application for issuance or renewal of a license" in 2002, N.C. Gen. Stat. § 150B-3(a) did not prevent DENR from imposing fines on Overcash for a lack of UST permits.[5] This last assignment of error is, therefore, overruled.

Affirmed.

Judges WYNN and STEPHENS concur.

---

5. Overcash also argues that he was denied notice that his applications were being placed on hold. We need not address this argument because it does not negate the fact that Overcash failed to have the required permits for his USTs for a period prior to the filing of his 2002 applications and, therefore, his argument is not relevant to the propriety of the imposition of the penalty.